[S. F. No. 2152. Department Two.—May 28, 1902.]

## JOHN NICHOLS, Respondent, v. A. W. RANDALL, Appellant.

MONEY DEPOSITED FOR LOAN—PLEADING—VARIANCE—FRAUD IN SALE OF LAND.—Under a complaint alleging that the plaintiff deposited with the defendant a specified sum of money, to be loaned by the defendant for the plaintiff, under guaranty of a certain rate of interest, which money the defendant did not loan, but used in his business, and fourteen years thereafter repudiated the trust in regard to the money and refused to pay it to plaintiff, the plaintiff must be confined to the cause of action stated, and evidence that a fraud was committed upon the plaintiff by the defendant sixteen years prior to the commencement of the action, by the concealment of the price per acre of land sold by the defendant for the plaintiff, and by reason of the plaintiff being entitled to the proceeds of two hundred and eighty acres of land held by the defendant in trust for the plaintiff, shows a cause of action entirely outside of the issues made by the pleadings, upon which no recovery can be had under the complaint.

ID.—IMPROPER ADMISSION OF EVIDENCE—STATUTE OF LIMITATIONS—AMENDMENT—ABUSE OF DISCRETION.—Where the court, against defendant's objection, improperly allowed evidence of a different cause of action for the plaintiff, under the answer to the complaint, it was an abuse of discretion to refuse to allow the defendant to file an amended answer pleading the statute of limitations and that the cause of action was barred by the laches of the plaintiff.

ID.—AMENDMENTS IN FURTHERANCE OF JUSTICE—SUBSTANTIAL RIGHT TO PLEAD STATUTE—ESTOPPEL OF PLAINTIFF.—It would have been in furtherance of justice to have allowed the pleadings to have been amended so as to present the issues properly; but to allow the complaint to stand as framed, with no suggestion of the real nature of the cause of action, and no opportunity given to the defendant to plead the statute of limitations, was to deprive him of a substantial right. Plaintiff will not be allowed to set forth a special contract in the nature of a trust, so as to avoid the statute of limitations, and then, when the real nature of his case is disclosed, object and prevent the defendant from pleading the statute.

ID.—PLEADING—COMMON COUNT—SPECIAL CONTRACT.—While it is a rule of pleading that the plaintiff may, in many cases, recover on a common count where there is a special agreement, yet if a plaintiff pleads a special agreement, he cannot recover the same as if he had pleaded the common count.

ID.—MONEY HAD AND RECEIVED—NOTICE OF NATURE OF CLAIM—ANSWER.—If the plaintiff, instead of pleading the special contract alleged, had set forth that the defendant was indebted to him for moneys

had and received by defendant for plaintiff's use from the sale of
lands belonging to the plaintiff during specified years, the defendant
would have had some notice of the nature of the claim, and could
have prepared his answer accordingly, and have pleaded the statute
of limitations thereto.

ID.—STATUTES OF LIMITATION FAVORED.—Statutes of limitation have
become rules of property. They are vital to the welfare of society,
and are favored in law.

APPEAL from an order of the Superior Court of Hum-
boldt County denying a new trial. G. W. Hunter, Judge.

The facts are stated in the opinion.

S. M. Buck, and C. M. Wheeler, for Appellant.

Sevier & Selvage, for Respondent.

COOPER, C.—The amended complaint alleges that on
April 1, 1883, the plaintiff deposited with defendant $35,000
to be loaned by defendant for plaintiff, and that defendant
guaranteed plaintiff nine per cent per annum interest upon
said money, compounded annually.

That defendant did not loan said money, but used the same
in his own business.

That in April, 1897, the defendant repudiated his trust in
regard to said moneys, refused to account to plaintiff therefor,
and ever since has refused to pay plaintiff the said sum or any
part thereof. Judgment is prayed for said $35,000 and
$20,000 interest alleged to be due thereon.

Defendant answered, and, after denying the allegations of
the complaint, alleged by way of counterclaim that between
the years 1875 and 1896 there was an open, mutual, and
current account between plaintiff and defendant, and that in
December, 1896, said account was stated and agreed upon and
by it plaintiff was found to be indebted to the defendant in the
sum of $3,739.03, which sum has not been paid. Also, in a
separate count, defendant, by way of counterclaim, alleged
that between the years 1875 and 1896 defendant loaned and
advanced to plaintiff many thousands of dollars, all of which
has been repaid by plaintiff to defendant except the sum of
$3,739.03, which amount remains due and unpaid. Judg-
ment is prayed in the answer for said sum. The case, upon

these pleadings, was tried before a jury, and a verdict rendered in favor of plaintiff for $21,632.

Subsequently, on motion for a new trial, the court reduced the amount to $12,000, which seems to have been consented to by plaintiff.

The court then made an order denying the defendant's motion for a new trial, from which order this appeal is taken.

The main contention of defendant is, that the court erred in the admission of evidence showing a case entirely different from that alleged in the complaint. This is the only point that need be considered.

The complaint sought to charge defendant upon a special contract in regard to a deposit of $35,000.

The plaintiff testified that he left the money that he sold his timber-land for in 1882 with defendant. "He told me if I would leave the money with him it should net me nine per cent; think this was in April, 1883; it was left with him under that agreement." It appears, without conflict, that about December, 1882, defendant sold to one Russ a tract of about 3,300 acres of timber land, part of it being land of plaintiff and part of it land of defendant. That he gave plaintiff credit on his books for 1,400 acres at twenty dollars per acre, amounting to $28,000. That statements of plaintiff's account were given to him at different times containing such credit entry.

It is sufficient here to say that the money alleged to have been deposited with defendant was the proceeds of the timber-land sold by defendant to Russ in 1882. The plaintiff sought to prove, and introduced evidence tending to prove, that of the land sold two hundred and eighty acres stood on the records in the name of defendant, but was held in trust for plaintiff, and that, instead of 1,400 acres plaintiff should have credit for 1,680 acres, and that the land brought twenty-five dollars per acre instead of twenty. The difference in the amount of land (280 acres) and the difference in price for the whole ($5 per acre) were the important points by virtue of which the plaintiff sought to make out his case against defendant. That a fraud was committed upon plaintiff in 1882, sixteen years prior to the commencement of this action, by reason of the concealing of the real price per acre, and by reason of plaintiff being entitled to the proceeds of 280 acres

of land held by defendant in trust for plaintiff, was attempted to be established by parol evidence upon a complaint on a special contract that contains not even a suggestion as to fraud or mistake. The defendant objected at every opportunity, and insisted that the evidence was not competent under the pleadings. After the plaintiff's counsel had stated the case to the jury, the counsel for defendant stated to the court that the complaint did not disclose any such facts as counsel for plaintiff had stated that he would prove, and asked permission of the court to amend his answer, which permission was refused.

After plaintiff had introduced some evidence, and was endeavoring to show that plaintiff owned a greater number of acres than defendant had given him credit for, the judge said: "If you can show that Mr. Nichols had transferred more land to Mr. Randall, which was sold to Russ, than he has received credit for in his account, you may do so.

"*Mr. Buck.*—Well we will stop this trial right here. They may amend their complaint and set up these facts. Let us know what it is you claim, so we can meet it. If we only know what the plaintiff claims we will meet and fight it.

"*The Court.*—If you had a complaint upon that theory, and an answer denying it, I would know what to do, but the only question in my mind is, Is it admissible under the first cause in the cross-complaint? I think I will permit evidence as to the land sold to Russ, and the price, on the part of Mr. Nichols. I will hear what he has to say as to the land that Randall sold to Russ for him."

After the court had ruled that the evidence would be allowed under the allegations of the answer, counsel for defendant asked leave to amend his answer by striking therefrom the count under which the court held the evidence admissible. This the court refused. Defendant's counsel, during the progress of the trial, filed an affidavit setting forth the fact that he was surprised by the rulings of the court as to the admission of evidence under the pleadings, and again asked that he be permitted to file an amended answer. The amended answer was prepared and exhibited to the court, but the court refused permission to file it.

The proposed amended answer pleaded the statute of limitations and alleged that the action was barred by the laches

of plaintiff. The court then allowed parol testimony as to lands disposed of by defendant being held in trust for plaintiff, and that, in face of the record title, that plaintiff really owned the lands.

This was entirely outside of the issues made by the pleadings. The plaintiff should have been confined in his proof to the cause of action as set forth in his complaint. If he deposited $35,000 with defendant for a certain purpose, that was one thing. If defendant fraudulently disposed of lands held in trust, and fraudulently misrepresented the price for which the lands were sold, and appropriated the proceeds, that was another and different thing. The defendant had the right to have the complaint state the facts upon which it was sought to charge him in a plain and concise manner. He had the right to meet the facts by proper answer and to plead the statute of limitations if he so desired. Many of the transactions had taken place nearly twenty years before the suit was brought. Defendant kept books and furnished plaintiff statements that had not been questioned for years.

Plaintiff testified in cross-examination, in speaking of the land: "Could not tell you how much I deeded to Randall. . . . Somebody would have to look at the deeds to find out what I did deed." And in speaking of the accounts: "They never refused to give me anything I asked for. Never found any fault. I didn't know anything about it. I didn't try to know anything about it. I trusted everything to him. When the account was furnished I found out they claimed I drew all the money. I drew money there for twenty years. Drew $800 at one time. When I left the money with Randall the agreement was that when I wanted any money I should draw it. Always got it when I wanted it till December, 1896."

This evidence shows how important it was that the proof should have been confined to the pleadings.

If the court's views had been correct as to the competency of the evidence under the pleadings, the defendant should have been granted permission to amend his answer. The refusal to grant such permission under the circumstances was an abuse of discretion. It would have been in furtherance of justice to allow the pleadings to have been amended so as to present the issues properly. To allow a complaint like this to stand, with no suggestion of the real nature of the cause of

action, and no opportunity given defendant to plead the statute of limitations, is to deprive him of a substantial right. If the practice in this case be adopted, and, under an allegation of money deposited under special contract, the plaintiff be allowed to prove fraud, to charge the price of lands standing in defendant's name with an equity in favor of plaintiff, and to show a misrepresentation as to the amount the land sold for, we will in the future have little use for pleadings. Even the rules laid down in the Code of Civil Procedure could be dispensed with. It is one of the elementary rules that the proof must correspond with the allegations and be confined to the point at issue.

It has many times been said here that a judgment cannot be sustained unless the proof establishes the cause of action alleged in the complaint, even though a different cause of action be fully proven. (*Mondran* v. *Goux*, 51 Cal. 151; *Bryan* v. *Tormey*, 84 Cal. 130; *Stout* v. *Coffin*, 28 Cal. 65; *Devoe* v. *Devoe*, 51 Cal. 543; *Murdock* v. *Clarke*, 59 Cal. 683.) It is said by plaintiff that this is really an action of *assumpsit* for money had and received, and that such form of action may be used in this state. It has been held that such counts are good in the absence of a special demurrer. (*Minor* v. *Baldridge*, 123 Cal. 190, and cases cited.) But this is not the common count in *assumpsit*. The common counts in *assumpsit* are founded on express or implied promises to pay money. They lie only in cases in which the action of debt is sustainable as a general rule. The *indebitatus assumpsit* count states that the defendant was, or is, indebted to the plaintiff in a certain sum of money for (stating generally the consideration), and that, being so indebted, the defendant promised to pay plaintiff the said sum of money on request. (1 Chitty on Pleading, p. 352.)

The contract set forth in this case is a special contract, by which it is alleged the money was deposited "to be loaned by defendant." That in April, 1897, "the said defendant repudiated his said trust in regard to said moneys." While it is a rule of pleading that the plaintiff may, in many cases, recover on the common count, when there is a special agreement, yet it is not the rule that he may recover upon pleading the special agreement the same as if he had pleaded the common count. If plaintiff in this case had set forth that

defendant was indebted to him for moneys had and received by defendant for plaintiff's use from the sale of lands belonging to plaintiff, from the year 1882 up to the year 1898, the defendant would have had some kind of notice of the nature of the claim, and could have prepared his answer accordingly. Plaintiff will not be allowed to set forth a special contract in the nature of a trust so as to avoid the statute of limitations, and then, when the real nature of his case is disclosed, object and prevent defendant from pleading the statute. While this would be a very ingenious way of avoiding the statute, it does not commend itself to us as a proper rule for the courts to adopt. Statutes of limitation have become rules of property. They are vital to the welfare of society and are favored in law. "They are found and approved in all systems of enlightened jurisprudence; they promote repose, by giving security and stability to human affairs; important public policy lies at their foundation; they stimulate to activity and prevent negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary." (*Wood* v. *Carpenter*, 101 U. S. 135, 139; *Shain* v. *Sresovich*, 104 Cal. 406.)

It is not necessary to express our views upon the evidence. The order should be reversed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order is reversed.        McFarland, J., Henshaw, J., Temple, J.