[S. F. No. 3995.    Department Two.—January 29, 1907.]

## J. C. BROWN, Respondent, v. CROWN GOLD MILLING COMPANY, Appellant.

ACTION FOR SERVICES—PLEADING—QUANTUM MERUIT—IMPLIED PROMISE —EXPRESS PROMISE—SURPLUSAGE.—A complaint stating that plaintiff performed certain services for the defendant and alleging their reasonable value, and that they were rendered at the special instance and request of the defendant, states a sufficient cause of action on *quantum meruit*. From these facts the law implies a promise to pay the reasonable value, and an averment of an express promise to that effect is surplusage which will not vitiate the pleading.

ID.—VARIANCE—EVIDENCE OF CONTINGENT CONTRACT—BREACH WITHOUT CAUSE—SUPPORT OF QUANTUM MERUIT—NONSUIT.—Although proof of a contingent contract would be a fatal variance, where a contract to pay a definite sum absolutely is alleged; yet where the cause of action is upon a *quantum meruit*, and a contingent contract has been broken, proof of such contingent contract and of its breach without cause, shows no variance justifying a nonsuit, but supports the *quantum meruit*.

ID.—WRONGFUL DISCHARGE OF EMPLOYEE—RESCISSION OF CONTRACT— RECOVERY OF REASONABLE VALUE OF SERVICES.—Where an employee is discharged by his employer without cause during the term of his employment, he may regard the contract as rescinded, and sue upon a *quantum meruit*, and recover the reasonable value of his services, as if the special contract of employment had never been made.

ID.—IMMATERIAL INFIRMITIES IN CONTRACT—UNCERTAINTY.—A plaintiff in *quantum meruit* does not sue upon an express contract or for a specific performance of it; and it is immaterial what infirmities exist in the contract actually made, or whether it is or is not void for uncertainty, or for any other cause.

ID.—EMPLOYMENT BY CORPORATION—MANAGER DE FACTO—KNOWLEDGE OF DIRECTORS—IMPLIED RATIFICATION.—A contract of employment by a corporation may be made by one who is its manager *de facto;* and where the terms of the contract of employment were known to the majority of its directors individually, and they did not disaffirm the contract, they are deemed in law to have ratified it.

ID.—EVIDENCE—TERMS OF EMPLOYMENT—STATEMENTS OF MANAGER.— Statements made by the manager of the corporation during the course of the continuous employment of plaintiff by the corporation under the manager's authority with reference to the terms of the employment were admissible as tending to show those terms.

ID.—CONTINGENT EMPLOYMENT FOR LIFE—SUCCESS OF BUSINESS—DISCHARGE—EVIDENCE OF PRESENT CONDITION.—Where, by the terms of the contract of employment, plaintiff, as an expert assistant in a

business, was to have a position for life when the business was successful, with ample remuneration, and meanwhile was to have a small weekly salary for living expenses, his discharge could be justified only by proof of cause therefor, or that the business was in fact a failure; and mere evidence that it had not paid expenses and that the company had present indebtedness not paid, without any pretense of failure of the enterprise, was inadmissible.

ID.—RECEIPTS OF WEEKLY SALARY IN FULL—MEASURE OF COMPENSATION—EXPLANATION OF PURPOSE—INSTRUCTIONS.—In view of the circumstances and terms of the contract, the court properly refused an instruction that receipts for weekly salary ''in full for account'' must be regarded as a deliberate admission that the rate of compensation stated therein was the rate expressly agreed upon, and properly instructed the jury ''that a receipt is never conclusive; it is always open to explanation, and the purpose for which it was given may be shown.''

ID.—SERVICES OUTSIDE SCOPE OF EMPLOYMENT—REASONABLE COMPENSATION—INSTRUCTION—QUESTION FOR JURY.—An employee in a particular service has the right to a reasonable compensation for services rendered outside the scope of·his employment, although there is no express agreement therefor. Where plaintiff's evidence justified an instruction to that effect, it was properly given; and the question whether services were in fact rendered by plaintiff outside the scope of his employment was one for the jury to determine.

ID.—INSTRUCTION AS TO WRONGFUL DISCHARGE—FACT NOT ASSUMED—DUTY OF DEFENDANT.—An instruction that if the jury found that the agreement was that plaintiff should work for two dollars and fifty cents per day until the company was in a condition to pay more, or until it got in a more prosperous condition, ''then the defendant had no right to discharge the plaintiff without cause,'' does not improperly assume that plaintiff's discharge by defendant was wrongful, or take that question from the jury. It was subject to a reasonable application by the jury to the evidence; and if defendant wanted it more clearly stated, it should have asked the court to· make it so.

ID.—INSTRUCTION AS TO EFFECT OF EMPLOYER'S ACTION.—An instruction ''that where a servant has been wrongfully discharged during the term of his service, or where the term of service is otherwise closed by his employer's action, the employee may treat the contract as rescinded and sue on a *quantum meruit* for the reasonable value of the services performed'' neither assumes a ''wrongful discharge'' · nor is objectionable in the use of the words ''or where the term of service is otherwise closed by his employer's action.''

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Bigelow & Dorsey, for Appellant.

J. J. Scrivner, and Thomas M. Diviny, for Respondent.

LORIGAN, J.—This action was brought by plaintiff to recover from defendant the reasonable value of certain services performed for it from August 1, 1900, to December 14, 1901.

The case was tried before a jury, a verdict rendered for plaintiff for $2,955, and from the judgment entered thereon defendant appeals, the grounds urged for a reversal being presented upon a bill of exceptions accompanying the appeal from the judgment. .

At the close of plaintiff's case defendant moved for a nonsuit, which was denied. This is the first error assigned, and in order to properly discuss it it is necessary to state portions of the pleadings and of evidence offered under them by plaintiff.

The complaint, after enumerating the various services performed by plaintiff at the instance and request of defendant, further alleged "that such services were so rendered and performed at the special instance and request of said defendant, and said defendant then and there promised and agreed to pay the plaintiff a reasonable compensation for the same," followed by an allegation of their reasonable value.

The answer admitted the performance of the services as alleged, but averred that plaintiff had agreed to perform them for fifteen dollars per week up to August 3, 1901, and for twenty dollars per week thereafter during the time claimed, which amounts had been paid him weekly and for which he had given receipts.

The evidence on the part of plaintiff showed that the defendant was a corporation organized to exploit a patented machine for the concentration of ores and was endeavoring to make the patent a success. It had a shop in the city of San Francisco, where the machine was manufactured, operated, tested, and shown to those interested in such processes, and it was in connection with the exploiting of this machine that the plaintiff was employed. The plaintiff had been en-

gaged in mining for over thirty years, his specialty being smelting—working in base metal ores which require concentration and smelting. He had acted as manager for mining corporations, understood the duties of one acting in a general advisory capacity as an engineer or metallurgist of such corporations, classifying ores, exploiting machines, composing and writing scientific articles, revising assays, and operating concentrators.

The agreement under which plaintiff entered into the services of defendant was claimed by him to have been made with L. B. Doe, at the time a director and vice-president of the corporation, and, as plaintiff testified, its general manager, and to have been arrived at after negotiations between them taking place at different times. Plaintiff's testimony on the subject was, that he was sent for by Mr. Doe in June, 1900, for the purpose of writing a technical article to appear in a scientific paper, setting forth the value of defendant's concentrator above all others in the market. He prepared this, and at the request of Mr. Doe he wrote also an article on the merits of the machine—a prospectus—for presentation to possible stock-buyers, and for general circulation, and delivered it to Mr. Doe at the office of the company. At that time Mr. Doe stated to him that the articles he had written were satisfactory and the suggestions made as to their process were invaluable; that the company would have to have some one to explain the machine; that none of the members of it were able to do so; that people came in and offered technical objections that they could not meet, nor could they describe the machine as the plaintiff had described it in his articles; that it was a new enterprise just starting in; that the company did not have a great deal of money and were not able to pay large salaries; that the company expected as soon as their plant was in operation to show it and explain it and extol its virtues to visiting mining men; that they expected thereby to do a large amount of business, and expected it would increase the value of the capital stock, so that they could find a market for the treasury stock, and said that he would like to arrange for plaintiff to come there and explain the operation, merits, and advantages of the machine, and wanted to know what he would charge for such services. Plaintiff said he would consider the matter and let him know

the next day. As to what occurred next day plaintiff testified, ''The next day I called there and after some general conversation about the machine and the articles and the best method of doing business, I told Mr. Doe that I had thought over the matter, that I was a speculative fellow, and liked to take chances of that kind, had made a great deal of money by taking chances of that kind in mining companies, and considering the condition of the corporation, as he had stated to me, that I was willing to come there and only draw down enough money to live on. He wanted to know what that figure was and I told him seventy-five dollars a month, that I would come there and draw down in cash seventy-five dollars a month, . . . and a call on a certain amount of the stock for the difference. Mr. Doe said to me 'I don't think that the company would like to alienate any of the stock at the present time.' I said 'Well, when the company succeeds —sells its treasury stock, then I can draw the other.' '' Nothing was decided at this meeting, and plaintiff agreed to call next day. On the next day he went to the office of the company, when he and Mr. Doe resumed their negotiations. As to these further negotiations the plaintiff testified: ''Mr. Doe said to me he had talked with his partners, as he expressed it, and they thought that they couldn't afford to allow me more than $15.00 a week for the present as compensation. I hardly liked the word, and I said 'Mr. Doe, a plain understanding hurts nobody; I am a thousand times obliged to you for making an opening. Now I would like to know what my duties are going to be.' He said 'Your duties will be to meet visitors coming in, explain the machine to them, meet their arguments against it, and answer any technical objection that they may bring out, and if we need any—if there are any criticisms in the press, we will expect you to answer them, and things of that character.' 'All right,' I said. 'The duties are not onerous, but they require a wide field of knowledge to perform them, and I want you to understand as plainly as I can that $15.00 is not my compensation for doing this work.' 'Mr. Brown,' he said, 'why I know that, that is no pay at all, that is no salary at all for a man of your ability, I know that, and,' he added, 'as soon as we sell our treasury stock or get any of our machines established, our business established, we will furnish you with a

position as long as you live, we will see that you are amply compensated for the value of the services that you will render.' I said 'Mr. Doe that is perfectly satisfactory to me.' We walked over to the desk where Mr. Wood (a director and general manager of the manufacturing department of defendant) was working before a window, and he called Mr. Wood over to him and said: 'Mr. Wood, I have arranged with Mr. Brown to come here; he is to draw down $15.00 a week.' 'That is satisfactory,' said Mr. Wood, and he turned his back and walked away."

In this last conversation Mr. Doe stated that it would take the company about six months to get into a condition to sell their stock, at which time the company was to fix the salary of plaintiff, and he was then to be paid the difference between the amount he was to draw and what would be a handsome remuneration for his services considering the circumstances under which he went into the company's employment; that this salary, when fixed, was to date from the time plaintiff went to work, the company to be credited with the amount drawn by plaintiff for living expenses; that the plaintiff was to remain with the defendant until it was proven whether the enterprise was a failure or not; if the company was unable to establish its business, if it was an absolute failure, then the plaintiff could claim nothing against it. That plaintiff went to work under these terms, but, finding that fifteen dollars per week was insufficient to support himself and family, applied to the company for twenty dollars per week, which was allowed him; his salary, however, was never fixed, although he often demanded that it should be, and after remaining with the defendant for the period alleged in the complaint—some sixteen months—he was, without cause, discharged by the defendant.

We have stated the testimony of the plaintiff with reference to the terms of the contract only to illustrate the points made on motion for the nonsuit.

This motion was based first upon the claim that there was a material, fatal variance between the allegations of the complaint and the proof; that the complaint alleged an unconditional positive promise to pay plaintiff a reasonable compensation for his services, while the evidence showed that such promise was not unconditional, but contingent upon the

sale of treasury stock of the defendant, or the success of the corporate enterprise.

There is nothing in this point. If it shall appear that in law plaintiff, on a complaint stating a common count, was entitled to recover under the agreement shown to have been made with him by the defendant, we think the complaint is unobjectionable for that purpose. The claim of appellant is that the complaint states an express promise to pay plaintiff a reasonable compensation for his services. But, as the complaint states that plaintiff performed certain services for the defendant, alleges their reasonable value, that they were rendered at the special instance and request of the defendant, and were unpaid, it states all the facts that were required to be stated on *quantum meruit*. From these facts, which were all that were necessary to be alleged, the law raised a promise to pay. It was not necessary to allege any promise, and such an allegation was a mere conclusion of law from the facts stated. The allegation of an express promise was surplusage, and, that surplusage will not vitiate a pleading, is elementary. (*Wilkins* v. *Stidger,* 22 Cal. 236, [83 Am. Dec. 64]; *Abadie* v. *Carillo,* 32 Cal. 173; *De la Guerra* v. *Newhall,* 55 Cal. 21.)

Appellant relies upon the cases of *Owens* v. *Mead,* 104 Cal. 179, [39 Pac. 923], and *Nichols* v. *Randall,* 136 Cal. 426, [69 Pac. 26], in support of its contention. But these cases are not in point. In *Owens* v. *Mead* the complaint alleged an express agreement to pay a thousand dollars as attorney's fee in a certain action. The proof was that the promise of defendant to pay was not unconditional but contingent. This was held to be a fatal variance, and properly so, because, as the court said, "There is a wide and essential difference between the two contracts, and proof of one will not support a finding that the other was made. The plaintiff's allegation of an absolute promise was not sustained by proof of the contingent promise, and evidence in relation to such contingent promise was not relevant to the issues made by the pleadings." Neither has *Nichols* v. *Randall* any relevancy. In that case the plaintiff alleged that he deposited with the defendant certain moneys to be loaned by defendant for him, and that defendant guaranteed him nine per cent interest upon said money; that defendant did not loan said money,

but used it in his own business, and subsequently repudiated the trust. The evidence on the part of plaintiff tended to show that defendant had sold lands which he held in trust for plaintiff and fraudulently misrepresented the price obtained, and appropriated the proceeds. As a special contract, to wit: that the money was deposited with defendant to be loaned by defendant, was pleaded, the evidence introduced had no tendency to support this allegation, and hence there was a material variance. The pleadings and proofs in both cases were radically different from those in the case at bar. In the cases particularly referred to, the actions were brought on an express contract, and sought to be sustained by proof of a contingent or implied contract. Here the action is brought not upon an express contract, but upon a *quantum meruit* to recover the reasonable value of services. The contract which was shown by the evidence of plaintiff to have been made was not proven for the purpose of recovering upon it, but for the purpose of showing that it was entered into between himself and the defendant, its terms, and a breach of it on the part of defendant by discharging him without cause, for the purpose of recovering on a *quantum meruit* the reasonable value of the services he performed under it prior to its breach.

This disposes of the point relative to the alleged variance between the allegations and the proof urged as a ground for a nonsuit.

In addition it was urged upon said motion that there was no evidence in the case to sustain plaintiff's alleged cause of action. In this regard it is insisted that the contract claimed to have been entered into between plaintiff and defendant was so indefinite and uncertain in its terms that it could not be made the basis of a recovery. But this is not an action upon the contract. It is not an action for specific performance of the contract, or for damages for its breach.

The complaint here, as we have said, is upon a common count for the recovery of the reasonable value of services performed. Evidence of the making of the contract was for the purpose of showing the terms and nature of plaintiff's employment under it, supplemented by proof of its breach by defendant as a basis for the recovery of the reasonable value of his services. (*Reynolds* v. *Jourdan*, 6 Cal. 108; *Castagnino*

v. *Balletta,* 82 Cal. 250, [23 Pac. 127].)   Under such circumstances it is immaterial whether the contract is void for uncertainty or not.   As plaintiff is not suing upon it, these infirmities are of no moment.

Now, as to the law upon this subject.   It is the general rule that where an employee is, without cause, discharged by his employer during the term of his employment, he may regard the contract as rescinded and sue upon a *quantum meruit* and recover the reasonable value of his services, as if the special contract of employment had never been made.   (2 Ency. of Pl. & Pr., 1011, note; *Reynolds* v. *Jourdan,* 6 Cal. 108; *Adams* v. *Pugh,* 7 Cal. 151; *Hartman* v. *Rogers,* 69 Cal. 643, [11 Pac. 581] ; *Castagnino* v. *Balletta,* 82 Cal. 250, [23 Pac. 127].)

This he may do when no question could arise as to the validity of the contract, and, independent of the other remedies, he has, namely, to regard the contract as broken and immediately sue for damages for its. breach, or to treat the contract as still subsisting, and, at the expiration of the term, bring suit for the entire sum agreed to be paid.   Where, however, the contract between the employee and the employer is void for indefiniteness or uncertainty, or for other reasons, neither of the last two remedies was available to him, because they can only exist where there is a valid contract, and where there is not, his only remedy is to sue upon a *quantum meruit.* It is held that such an action will lie where services have been rendered upon a contract which was void under the statute of frauds.   (*Patten* v. *Hicks,* 43 Cal. 509.)   And by parity of reasoning the same rule must be applied where the contract is void for uncertainty.   That it is so applied is supported by the authorities generally, but attention need only be particularly called to the recent case of *Davidson* v. *Laughlin,* 138 Cal. 320, [71 Pac. 345, 5 L. R. A. (U. S.) 579], in support of such right of recovery.   In the case cited the contract was to employ the plaintiff as defendant's agent at a reduced salary during the construction of a building, in consideration of a promise to employ him as agent in its management at a stipulated increased salary after its completion. After the building was completed plaintiff was discharged and brought suit to recover the reasonable value of his past services.   The point made on appeal from a judgment in

favor of plaintiff was that no recovery could be had because the contract was indefinite. This court said, ''As to the questions of law involved in the case, it seems clear that as the agreement of appellant to employ respondent as agent of the building after its completion, at the agreed compensation, was the consideration of the latter's agreement to take $60 per month for his previous services, the failure of appellant to so employ respondent was a breach of the contract which released the latter therefrom, and authorized him to treat it as rescinded, and to recover for his services what they were reasonably worth. This, of course, is the general rule applicable to such a case, and it is too elementary to need reference to authorities. It is contended, however, that the rule does not apply in the case at bar because the contract for permanent employment was only for an indefinite time; that it cannot be specifically enforced, and that it could be terminated by either party upon reasonable notice. But this is not an action to compel a specific performance of the contract for employment after the completion of the building, nor to recover compensation for his services after such completion, nor to recover future profits which respondent might have earned after that time if appellant had complied with his said promise of future employment. The action is for services rendered prior to the time when the future employment at $150 was to commence. It is based upon the theory that appellant's promise of the future employment was the consideration of respondent's promise to do the previous work for a compensation much less than its real value; that each of said promises was part of the contract and that appellant's refusal to perform his said promise abrogated the contract and entitled respondent to recover the reasonable value of his past services. This theory is well founded in legal principles, as it is in consideration of justice and fair dealing.''

In the light of this authority we think the contention of appellant needs no further discussion.

It is true, respondent contends that the contract is not subject to the charges of indefiniteness and uncertainty urged against it. This matter we do not discuss, because, within the rule stated, even if indefinite and uncertain, and for that reason void, plaintiff would not thereby be precluded from

CL Cal.—25

recovery for the reasonable value of the services rendered by him under it. This disposes of the alleged error in denying the motion for a nonsuit.

Upon the further points urged: Various specifications are made of insufficiency of evidence to sustain the verdict. Among others it is contended (and this is the only one requiring consideration) that there was no evidence that L. B. Doe was the general manager of defendant, or had any authority or power to make any contract with the plaintiff.

It is true that at the time plaintiff was employed there was no resolution or record of the board of directors by which Mr. Doe, or any one else, was constituted manager of the corporation, or by which any one was authorized to employ or discharge men. Mr. Wood at that time had been appointed manager of the manufacturing department, but his duties had not been defined. Mr. Wood was patentee of the process, and engaged in constructing the machines. He was not the general manager of the company, but only manager of this department. As testified to by Mr. Hockett, the secretary of the board, "the resolution appointing Mr. Wood manager of the manufacturing department is the only resolution on record concerning Mr. Wood. There was no resolution passed appointing him general manager or manager of the testing and sampling department." It was in the testing and sampling department that plaintiff was employed; a department distinct from the manufacturing department. If Mr. Doe was not the general manager when plaintiff was employed, the company had none until Mr. Miller was appointed, or rather his appointment approved after Mr. Doe retired from the defendant. It is conceded law that in order to bind a corporation by his acts it is not necessary that any resolution should be passed appointing a general manager. It will be sufficient if it be shown that he was manager *de facto,* and we think there was sufficient evidence in the case from which the jury might find that at the time plaintiff was employed Mr. Doe was such manager. There is nothing in the point made in this connection that the contract of plaintiff was made with Mr. Wood, manager of the manufacturing department. Plaintiff was not employed in his department, but in the testing and sampling department. Under the evidence the jury were warranted in viewing the conversation with

Wood, after plaintiff was employed by Doe, as merely a state-
ment to him by Doe because all the parties were in the office,
and as also explaining to Wood why, thereafter, the plaintiff
would be found employed there. Aside, however, from the
evidence warranting the jury in finding Mr. Doe was the
*de facto* general manager of defendant when the contract
with plaintiff was made, there was also in the case sufficient
evidence from which the jury could find that the majority
of the board of directors of the defendant were advised of
the terms under which the plaintiff was in its employment
under his agreement with Doe. As they had such knowledge,
it was their duty promptly to disaffirm the action of Mr. Doe,
if it was unauthorized. Not having done so, they are deemed
in law to have ratified it. The majority of the board having
knowledge of the facts, it was not necessary, to conclude the
company defendant in favor of plaintiff, that his employment
should be ratified at a regular meeting of the board. It was suf-
ficient that the majority of the board individually were advised
of the terms of the employment of plaintiff by Mr. Doe, and
took no measures to disaffirm as directors that employment.
(*Pixley* v. *Western Pacific R. R. Co.*, 33 Cal. 184, 196, [91
Am. Dec. 623] ; *Crowley* v. *Genesee Mining Co.*, 55 Cal. 273,
275; *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 69, 72, 73,
[34 Pac. 527] ; *Scott* v. *Superior Sunset Oil Co.*, 144 Cal. 140,
[103 Am. St. Rep. 72, 77 Pac. 817].)

The next error assigned is upon a ruling of the court on
the admission of evidence. A witness called in chief for the
plaintiff testified that he had a conversation with Mr. Doe
some four months after the employment of plaintiff, in which
Mr. Doe stated that if everything turned out all right with
the company plaintiff had a life position with it; that
defendant proposed to take care of him, give him a life posi-
tion, and make up for the services he was then performing.

It is claimed that the defendant could not be bound by the
statement of Doe. But Doe was the general managing agent
of defendant when this conversation was had; the employment
of plaintiff was a continuous one; the statement of Doe was
with reference to the services of plaintiff as he was then
performing them, and the evidence was at least admissible
as tending to show that an agreement with reference to such
employment of plaintiff was made between Doe as manager

and plaintiff, as the latter claimed it was, and also to show
the terms of such agreement.

It is claimed, too, that the court erred in rejecting testimony
offered upon behalf of defendant. Inquiry was made of cer-
tain witnesses for the purpose of showing that defendant, in
the conduct of its business, had not made money; that it had
not made expenses; that there were certain outstanding notes
of the company in large amounts which had not been paid.
Objections to these questions were sustained, and, appellant
claims, erroneously. We do not see that these matters were
relevant to any issue in the case. The agreement with plain-
tiff was that he should remain with the company until it was
determined whether the business enterprise in which it was
engaged was or was not an absolute failure. Under the con-
tract plaintiff could not be discharged so as to defeat a claim
for compensation, unless for cause, or in the event that the
business enterprise was in fact a failure. Defendant did not
undertake to show that the business was a failure. On the
contrary, the evidence on its part showed that the company
was still pushing the enterprise and expected to make it suc-
cessful. The evidence offered and excluded could only tend
to show that the business had not yet reached a profit-making
stage. This was not material. The business might have been
on a fair way to success or be established, and the company
not yet making money, or be heavily indebted. A showing
as to defendant's financial condition could not defeat plain-
tiff's claim. It could only be done by showing that the
enterprise was a failure, and, as the evidence offered had no
tendency to show that, it was properly rejected.

We now approach a consideration of certain instructions,
the accuracy of which are challenged by appellant.

As to the first complained of. Upon the trial the defendant
offered in evidence various receipts given by plaintiff to
defendant. They were each for one week's salary as plaintiff
was receiving it, either fifteen or twenty dollars, and recited
that they were "in full for above account." Defendant asked
for an instruction telling the jury in effect that each receipt
must be regarded as a deliberate admission that the rate of
compensation stated therein was the rate expressly agreed on;
that the acceptance of the amount specified in such receipt
was equivalent to an express contract fixing his compensation

at the rate actually paid him. The court refused to give
such instruction, and instructed the jury "That a receipt is
never conclusive; it is always open to explanation, and the
purpose for which it is given may be shown." No error was
committed by the court in refusing to give defendant's in-
struction and in instructing the jury as it did. The evidence
of plaintiff showed that these receipts were given for his
living expenses under his contract with defendant, whereby
he was to receive a larger compensation when a successful
stage in carrying on the business of defendant was attained.
Appellant's instructions were framed on the theory that pay-
ment to plaintiff as evidenced by these receipts was in full
for all services rendered during each week. This, however,
ignores the other part of the contract claimed by plaintiff,
that such payments were only to be in full in the event that
the business enterprise of defendant should turn out to be
a total failure. Otherwise he was to be paid more per week.
The terms of a receipt are to be construed by a consideration
of all the circumstances under which it was given. What was
intended by giving it, and what its effect is, are matters to be
determined by the jury from all the evidence on the subject.
The general rule is that receipts in full (as those in question
were) may be explained by parol evidence showing the pur-
pose for which they were given. (*Winans* v. *Hassey,* 48 Cal.
635; *Simmons* v. *Oullahan,* 75 Cal. 508, [17 Pac. 543] ; *Cowan*
v. *Abbott,* 92 Cal. 100, [28 Pac. 213] ; *Hardin* v. *Dickie,* 123
Cal. 513, [56 Pac. 258].)

In the next instruction complained of the court told the
jury, in effect, that if they believed from the evidence that
the plaintiff was employed by defendant for the sole purpose
of exploiting a certain specific machine—that is, explaining it
and its mode of operation, and the results produced by it, to
persons inquiring concerning it, and meeting arguments and
objections made against it—and also find from the evidence
that these services were to be rendered at a specified sum per
week, which was paid, still if they found that during the
term of his employment plaintiff, at the request of defendant,
rendered certain services outside the sphere of his employ-
ment, he was entitled to recover a reasonable compensation for
such services, although there was no express agreement to pay
therefor.

No exception can be taken to the instruction as embodying a correct principle of law.

It is claimed, however, by appellant, that it had no application to the facts in the case at bar, it being insisted that the extra services which plaintiff claims to have performed were all in connection with the operation and success of the machine relative to which he was employed. But whether these services which were claimed to have been extra were so, or were in the line of plaintiff's employment, were matters for determination by the jury, and their verdict must be deemed conclusive on the subject. The plaintiff testified that the services he was engaged to perform were to explain the concentrating machine to visitors, meet arguments and technical objections against it, and answer any criticism in the press. This was admitted by Mr. Doe. In addition to this service, it is alleged in the complaint, and admitted by defendant in the answer, that plaintiff acted as correspondent for the defendant and made official statements, classified ores, composed and wrote scientific articles, revised assays, and acted in a general advisory capacity as the engineer and metallurgist for the company in the construction and operation of its dry-milling and concentrating sampling plant. Notwithstanding that the performance of these services was admitted, they were testified to upon the trial by plaintiff, and it was further testified to by him that they were services rendered outside of the sphere of his particular employment, and rendered almost on every occasion at the express request of the defendant. The defendant did not attempt to show that the performance of these services was embraced within plaintiff's employment of explaining its concentrating machine. The jury might well find from the evidence that, in their nature, these services were without the sphere of plaintiff's employment, and, so finding, the plaintiff would be entitled to an award of a reasonable compensation therefor. An employee in a particular service has a right to compensation for services rendered on request outside of the sphere of his employment, although there is no express agreement to pay therefor. (20 Am. & Eng. Ency. of Law, 2d ed., 19.)

It is next insisted that the court erred in instructing the jury, in effect, that if they found the agreement between plaintiff and defendant was that plaintiff should go to work

for two dollars and fifty cents per day until the company was
in a condition to pay more, or until it got in a more prosper-
ous condition, "then the defendant had no right to discharge
the plaintiff without cause," and the plaintiff is entitled to
recover the reasonable value of his services while in the em-
ploy of defendant; and erred also in an instruction "That
where a servant has been wrongfully discharged during the
term of his service, or where the term of service is otherwise
closed by his employer's action, the employee may treat the
contract as rescinded and sue on a *quantum meruit* for the
reasonable value of the services performed." The principal
criticism as to the accuracy of the first instruction referred
to is in the use by the court of the words "then the defendant
had no right to discharge plaintiff without cause"; that this
was an assumption by the court that plaintiff's discharge by
defendant was wrongful, and that it took away from the jury
the question as to whether it was or not, and, in any event,
assuming that it was intended as declaring a principle of law,
it was erroneous.

But the instruction does not pretend to be an assumption
of anything. It was intended to lay down a rule of law, and
as announced did not take from the jury the question whether
the defendant's discharge of plaintiff was wrongful or not.
Jurors are supposed to have in mind the evidence and the
questions at issue in a case before them, and to apply the
instructions of the court to that evidence and those issues.
Without discussing whether there was any evidence showing
that any reasonable cause existed for discharging plaintiff for
misconduct, under respondent's claim that there was not, and
conceding that there was, that matter was undoubtedly in the
minds of the jury and they applied the instruction to the
subject. The instruction informed them that if they found
the other facts stated by the court as to the contract to be true,
and that plaintiff was wrongfully discharged, they should find
in his favor. The reasonable view antithetically which the
jury must have taken of the instruction was that if they
found that plaintiff was rightfully discharged, as claimed
by defendant, they should not return a verdict in his favor.
As the jury by their verdict necessarily found that the plain-
tiff was wrongfully discharged—that is, that he was not guilty
of the misconduct which the defendant claimed warranted it—

we do not see how the defendant was injured because the court did not make its instruction more specific in terms. It was subject to a reasonable application by the jury to the evidence, and if defendant wanted it more clearly and definitely stated it should have asked the court to make it so. The same reasoning applies to the other instruction complained of in its use of the language "wrongfully discharged during the term of his service." Nor do we perceive any valid objection to the use in this last instruction of the expression "or when his term of service is otherwise closed by the employer's action," when considered in connection with the words quoted immediately preceding. This meant, and the jury must have so understood it as meaning, that where an employer, for any other reason than for cause, prevents an employee from discharging his duties under his contract with his employer, such employee may treat the contract as rescinded, and sue on a *quantum meruit* for the reasonable value of the services performed. This we have seen is correct as a proposition of law.

It is claimed that the court erred in rejecting some and modifying other instructions tendered by defendant. We have examined them, and think that no error was committed regarding them.

This disposes of all grounds urged for reversal which merit consideration. No error appearing in the record, the judgment is affirmed.

McFarland, J., and Henshaw, J., concurred.