[Civ. No. 2841.   Fourth Dist.   Sept. 3, 1942.]

S. M. BOSTOCK, Respondent, v. BEN HULSE et al., Appellants.

S. P. Williams for Appellants.

Russell Yeager for Respondent.

GRIFFIN, J.—This cause of action arose out of a breach of contract of employment wherein the appellants engaged the services of the respondent, a licensed structural engineer, to perform certain reconstruction work. The case was tried by the court without a jury.

The amended complaint set forth three causes of action. In the first, the plaintiff alleged that between May 23, 1940, and July 19, 1940, he drew plans and specifications, inspected building to be reconstructed, and made estimates for superintending the dismantling and reconstruction of the building; that for these services defendants agreed to pay 5 per cent of the cost of the building; that its cost was $8,000; and that the sum of $400 became due and payable to him for the services above referred to. For the second cause of action he alleged that on June 27, 1940, he submitted completed plans for the above-mentioned building to the Brawley City Building Department, paid $12 for a permit authorizing the erection of the building, and that the defendants agreed to reimburse him for said payment but that they refuse to do so. The third cause of action alleged that on the 23rd day of May, 1940, plaintiff and defendants entered into an agreement whereby the defendants employed the plaintiff to draw plans and specifications for the reconstruction of the above-mentioned building, as well as superintending the reconstruction; that the defendants agreed to pay for the services 5 per cent of the cost of the proposed building; that thereafter plaintiff commenced the performance of these services, drew sketches, designs and plans for the building, oversaw the dismantling of the old building, completed the plans and sub-

mitted the same to the Brawley City Building Inspector. This cause of action further alleged that on July 19, 1940, while plaintiff was completing the performance of this contract, the defendants without cause terminated the employment and repudiated the contract. The third cause of action also alleged that by reason of this wrongful termination of employment plaintiff suffered damages in the sum of $100 and that the reasonable value of the services actually performed was $300.

The court's findings in respect to these three causes of action were generally as follows: As to the first cause of action it found that plaintiff performed all of the services alleged therein, except that plaintiff did not superintend the reconstruction of the building because his employment was wrongfully terminated before the reconstruction work commenced, and as a consequence the sum of $400 did not become due and payable to the plaintiff for the services actually performed. The court then found for the plaintiff on the second cause of action to the effect that the defendants should reimburse plaintiff for the $12 fee advanced by the plaintiff for the building permit. As to the third cause of action the court found that the plaintiff did enter into an agreement on the 23rd day of May, 1940, whereby he agreed to prepare plans, sketches, and specifications, make estimates for, and superintend the demolition and reconstruction of the above-mentioned building; that the defendants promised to pay the plaintiff compensation for these services in the sum of 5 per cent of the cost of the building; that the plaintiff did commence the performance of these services; that he drew plans, designs and sketches for the building; that the plaintiff oversaw the dismantling of the old building until such time as the contract was terminated by the defendants; that he submitted the completed plans and specifications to the Brawley City Building Inspector and had them approved. Then the findings go on to state that on the 19th day of July, 1940, while the plaintiff was performing this contract, the defendants wrongfully and without lawful excuse terminated the employment, and that the plaintiff did well and faithfully perform all of the services required of him until said services were terminated. The court found that the plaintiff did not suffer damages in the sum of $100 by reason of the wrongful termination of employment, but the court did find that the reasonable value of the services actually performed by the plaintiff for the defendants was $300.

■   The issue on appeal has been strictly confined by the appellants to the question of whether there was sufficient evidence presented at the trial to establish the reasonable value of the services performed for the appellants by the respondent. Appellants contend that the evidence is insufficient to support the finding of fact that the plaintiff did not suffer damages in the sum of $100 by reason of the wrongful termination of employment of the plaintiff and that said finding is contrary to the evidence. It is argued that respondent was not entitled to recover the full contract price since that would compensate him for labor unperformed and for expenses of performance he did not bear; citing *Weichers* v. *Dehail*, 41 Cal. App. 547 [183 Pac. 187] ; and *Weaver* v. *Atlantian Const. Co.*, 84 Cal. App. 154 [258 Pac. 111].

The record clearly shows sufficient evidence to support the court's finding that $312 was due for services performed and monies advanced. The compensation agreed upon for the completion of the job was $400, or 5 per cent of the cost of reconstruction, which reconstruction cost was admittedly $8,000. As to the actual work performed, respondent testified that "I immediately proceeded to take certain necessary dimensions and investigations of the job, and they were —the preliminary was blocked out—." The record indicates that other men were working for respondent and assisted him in preparing his plans and specifications. These men were paid for their services by respondent. In response to the question "Approximately how much of your work for Mr. Hulse had you completed at the time he terminated your employment?" the respondent answered: "All of the work on the plans. The plans were completed and the permit had been delivered to Mr. Hulse on June 27, and I received his letter on July 19, three weeks later. All of the work with the exception of field—what we call field inspection during the time of construction, and part of that had been done . . . All that was left was to see that the building—was to go out and supervise the construction of the new building." The plans and specifications and preliminary plans were admitted in evidence and were before the court. The trial court allowed three-fourths of the agreed contract price of $400, which may have been part of the basis for the court's computation of the value of services performed. Appellants themselves submitted in evidence as part of their case in

chief a letter sent by respondent to appellants in which he apparently set forth what he considered to be the terms of the agreement and when his claim would be considered to be due. It reads in part as follows: "Full fee, 5% of $7,000, 75% of fee due upon issuance of building permit." It is agreed that the plans and specifications were completed and that the building permit was issued. There was ample evidence submitted to the trial court upon which that court could satisfy itself as to the percentage of work actually performed in relation to the work contracted to be performed, and inasmuch as the total contract price was agreed upon and admitted in the pleadings, the court could, from the evidence, establish what percentage of the contract price was due and owing to the respondent for the work actually performed. (*Brown* v. *Crown Gold Milling Co.*, 150 Cal. 376 [89 Pac. 86].) The cases cited by appellant are not in conflict with this conclusion.

The final argument of appellants must be considered in a lighter vein, i. e., the argument that the trial court erred in finding "that plaintiff did *not* suffer damages in the sum of $100," by reason of the fact that there was no basis for estimating the profit or loss on the part of the job that the respondent was prevented from performing. It is obvious that appellants cannot assert error in the ruling of the lower court when that error consists of a ruling in their favor. If the trial court had allowed respondent the sum of $100 by reason of the wrongful termination of employment, then the appellants might be in a position to argue that the trial court was in error, but when the trial court ruled against the respondent on that question, the appellants find themselves in the anomalous position of contending that the court erred in ruling in their favor. (*Estate of Funkenstein*, 170 Cal. 594 [150 Pac. 987].)

As no appeal lies from an order denying a motion for new trial, the attempted appeal therefrom is dismissed. (*Scott* v. *Landis*, 39 Cal. App. (2d) 163 [102 P. (2d) 820].)

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.