[Civ. No. 14767.   First Dist., Div. One.   Dec. 28, 1951.]

IVAN L. SLAVICH, Respondent, v. MARY F. SLAVICH, Appellant.

Edward A. Cunha and Dean Cunha for Appellant.

J. W. Ehrlich and Roy A. Sharff for Respondent.

WOOD (Fred B.), J.—Plaintiff filed an action for divorce upon the ground of cruelty, and defendant cross-complained for separate maintenance, alleging cruelty and desertion. The trial court found in favor of plaintiff and against the defendant, and rendered its interlocutory decree, granting plaintiff a divorce, dividing the community property, and ordering plaintiff to pay defendant support and maintenance of $100 a month for three years.

The defendant has appealed from the decree, plaintiff has not.

Appellant predicates her appeal upon asserted insufficiency of the evidence to support the findings of facts, inconsistencies in the findings, and denial of a fair trial by certain acts and conduct of the trial judge.

(1) *As to the sufficiency of the evidence,* appellant questions four of six acts of cruelty which the court found she committed.

A finding that in the presence of one McGill appellant cursed respondent and used profane language toward him on numerous occasions, is supported by the testimony of the witness Francis McGill. He said he visited the home frequently between 1942 and 1948, at times when respondent's son was there; heard appellant swear at respondent, in words he would rather not repeat.

A finding that on one occasion appellant locked respondent out of their home despite the requests of his son, and refused to admit respondent, making it necessary for him to obtain lodging at a hotel that night, is supported by the testimony of respondent, corroborated by that of his son.

A finding that for a period of three years prior to their separation, appellant on various occasions nagged, criticized, cursed, and used profane language to respondent, and that she habitually engaged therein so that it constituted a continous course of conduct toward respondent, is supported by respondent's testimony that she would swear at him and cursed and raised her voice at him all the time of their married life. That was corroborated by Vernon Williams, a neighbor, who said that on quite a few occasions between 1942 and 1948 he heard appellant call respondent vile and profane names; and by respondent's son, who testified she used profane language, which he would prefer not to repeat. McGill's testimony, above mentioned, is also corroborative.

Appellant denied having said or done any of these things. That produced a conflict in the testimony, which it was the function of the trial court to resolve.

The court also found that when respondent was appointed clerk of the municipal court, and many times thereafter, he requested appellant to quit her employment; that it was reasonable for her to do so but she refused, to the embarrassment of respondent. Respondent testified to that effect, adding that his salary having been increased he wanted her to stay home and take care of the home. Appellant said that he discussed the matter with her and it was decided that she would quit her employment when the house was put in condition, but the war intervened, help was in great demand, and one could not really quit a job; and that as late as 1948 it was agreed she would quit work when they were free from debt. Respondent's testimony on this subject was not corroborated by that of any other witness, but the law does not require that the testimony of a party to a divorce action be corroborated as to each and every item. (*Bastjan* v. *Bastjan,*

215 Cal. 662, 664-665 [12 P.2d 627]; *Price* v. *Price,* 71 Cal. App.2d 734, 736 [163 P.2d 501].)

The findings which appellant does not question as to sufficiency of the evidence, are that on one occasion appellant called respondent a name of approbrious connotation, in the presence of Vernon Williams, and that on another occasion in the presence of respondent's son she called respondent a "North Beach Hoodlum," told him to get out of the house, and said "You do not have enough guts to get out" and "I made you and I will break you."

█ In support of her claim that the evidence was slight and trivial, appellant cites certain remarks made by the judge during the course of the trial, such as "I have been waiting patiently for something specific," early in the trial, and, later, "I received the impression at the hearing yesterday that this case is made up almost exclusively of trivial incidents." The answer to this contention is that a judgment is tested by the trial court's judicial action (not judicial comment), as recorded in the findings of fact and conclusions of law, viewed in the light of the evidence received. (See authorities cited in 2 Cal.Jur. p. 808, § 476.)

█ It is clear that the facts found show a course of conduct sufficient to sustain a judgment of divorce for respondent upon the ground of extreme cruelty, with or without consideration of the facts which were evidenced by respondent's uncorroborated testimony.

Concerning the allegations of the cross-complaint, the court found that respondent left home because of appellant's acts of cruelty and because she locked him out of the family home at that time; he did not voluntarily and wilfully separate from her with intent to desert her. That finds support in the evidence despite appellant's sole testimony to the contrary. █ The court also found that respondent at no time has been guilty of extreme cruelty toward appellant, and that the allegations of the cross-complaint in respect thereto are untrue. It is not necessary to review those allegations and her testimony in detail. She said, among other things, that her principal claim for anything like mental cruelty had to do with his leaving her; that she had no difficulties with him any more than would occur in any family; and that his gambling from time to time affected her. It was the function of the trial judge to appraise her testimony and weigh it with other facts in evidence, which he did.

(2) *The asserted inconsistencies in the findings* are not subject to challenge by appellant.

Appellant claims the judgment should be reversed because, while granting respondent a divorce upon the ground of extreme cruelty, the court awarded appellant maintenance and support and the greater part of the community property.

First, it is important to note that the asserted inconsistencies occur in the conclusions of law, not in the findings of fact. The court separately found: (1) Appellant committed certain acts of cruelty, (2) certain items of real and personal property belong to the community, (3) respondent is able to pay appellant $100 a month for her support for three years and has stipulated to do so. From these facts, the court drew these conclusions of law: (a) respondent is entitled to a divorce, (b) the community property should be divided in a certain manner, and (c) respondent should pay appellant $100 a month for three years. The interlocutory decree was entered in accordance with the conclusions of law.

Since that portion of the decree which grants plaintiff a divorce is valid and is separable from the award of support and the division of community property, it may and should be affirmed regardless of the validity of the other portions. (*Harwell* v. *Harwell,* 26 Cal.App.2d 143, 144-145 [78 P.2d 1167].)

But appellant is not in a position to challenge the support award and the division of the community property. At most, these awards gave her more than is her right. If anyone may complain, it is the respondent, as the party aggrieved. He is not complaining. He has not appealed. "No judgment . . . shall be reversed or affected by reason of any error . . . , unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error . . . the said party complaining or appealing sustained and suffered substantial injury. . . ." (Code Civ. Proc., § 475.) This principle is accorded judicial recognition. (*Estate of Funkenstein,* 170 Cal. 594 [150 P. 987] ; *Bostock* v. *Hulse,* 54 Cal.App.2d 334, 338 [128 P.2d 912].) Therefore, we do not undertake to determine the validity or invalidity of the award for support or the division of community property, nor whether the court awarded the respondent a smaller portion of the community than may have been his right.

■ With reference to the community property, appellant directs attention to the fact that the decree purports to make a present disposition of it. That is an error which may and should be corrected by striking out the words of present disposition and inserting words to indicate that the disposition will be made in the final decree. (*Wilson* v. *Wilson*, 76 Cal.App.2d 119, 129-133 [172 P.2d 568].)

■ (3) *The asserted denial of a fair trial* is predicated upon the claim that the trial judge harbored the view that a marriage should be dissolved when the parties can no longer live happily together and for that reason denied appellant a decree for separate maintenance.

In support thereof, appellant invokes certain statements made by the judge during the trial and statements appearing in affidavits used upon her motion for new trial.

In one of the affidavits the statement is made that after respondent had presented his evidence a conference was had in the chambers of the judge and the suggestion was made that the case be settled with regard to a division of the community property and support and maintenance to appellant upon the basis of her being granted a divorce on her cross-complaint, but it is not stated therein, or elsewhere, that the judge made that suggestion.

Appellant directs attention to the fact that during the trial the court asked her counsel, "The lady is going to insist on a decree of separate maintenance, is that correct?" Her counsel responded in the affirmative, adding that he wanted an opportunity to further explain his position and to argue on the facts and the law. The court responded: "I will give you plenty of opportunity. I will say this, that never in my experience have I tried a case of this character, a divorce case or plea for separate maintenance, where there were so many intangibles that have been enlarged into apparently important features," and added: "You gentlemen might as well both remember that in making your arguments, when that time comes, that I have to be convinced that some of these matters that have been referred to at great length here are of importance in determining the merits of the case." We find in these remarks nothing to indicate that the judge had predetermined the case in any manner. On the following day, he said: "I received the impression at the hearing yesterday that this case is made up almost exclusively of trivial incidents. Perhaps collectively they are going to be more convincing than they now appear."

At the conclusion of the trial, the judge observed: "the facts developed in the course of this trial are very fragmentary, they are not of extreme importance, and I don't know how these people are going to be happy together if he accepts her invitation to come back to the home again. How is happiness ever going to be restored to that disturbed household. I can't see it. . . . There is a question involved as to whether, under the limited facts that he has developed, whether he is entitled to a divorce or not. The question, then, is whether she is entitled to a decree of separate maintenance under the facts as she had developed them. In order to obtain a decree of separate maintenance, she has to establish that she is entitled to a divorce if she wanted to claim a divorce. . . . It seems an immense amount of discussion here over very little. Of course, the case has to be decided." The trial judge also commented: "I think both these parties are acting very, very silly indeed, very silly. . . . [F]rom an economic standpoint, these people are way superior to the average American family. The only thing they lack, they don't lack any income, but they lacked happiness and the ability to get along with one another—but I think it has got beyond that point. They both exhibit, I think, extreme dislike for one another, both of them." The remarks were made after the evidence was in and after oral argument. They were the statement merely of tentative impressions, not of a definite decision, impressions which any trier of the facts might have. By his remarks, this judge brought these impressions to the attention of counsel on both sides and invited further discussion. He concluded with these words, "If you gentlemen want to discuss the case with me in chambers, you are at liberty to do so."

Counsel did further discuss the case, in writing. Counsel for respondent wrote a letter to the judge in response to a memorandum appellant had presented, and counsel for appellant replied by letter.

One of the affidavits presented upon the hearing of appellant's motion for a new trial contains a statement that after the judge had announced his decision he was asked if he had decided to give the respondent a divorce, he said: "I had to. I couldn't keep these people together. Mrs. Slavich wouldn't take a divorce, so I gave the divorce to him." It does not appear to whom or under what circumstances the alleged statement was made. That the judge made it, is denied in an affidavit of counsel for respondent.

Upon the hearing of the motion for new trial, the judge stated that the case was tried patiently and thoroughly, the arguments presented were given due consideration, and that he arrived at what he considered a well-considered, just, and fair decision; that he listened patiently to appellant's lengthy dissertation at the conclusion of the case; denied having any secret conferences with counsel for respondent in reference to any matters connected with the trial or decision of the case; and, as to the alimony, he doubted if it could be granted a losing party, but in this case it was supported by a stipulation which respondent made and the court confirmed during the course of the trial, and for that reason he believed it valid. As to the apportionment of the community property, we observe that the court was presented with a difficult problem. There was evidence that the home was initially equipped with appellant's furniture (augmented by furniture later acquired, for which appellant remains indebted, upon her personal note, in the sum of $586), and evidence tending to show that a considerable portion of the purchase price of $8,250 was paid with moneys inherited by appellant. Due, apparently, to a loan subsequently made, the home is encumbered for a debt of about $5,290, which the decree orders appellant to assume and pay. The other principal items were the sum of $4,500 credited to respondent in a retirement fund, awarded to him, and $2,600 credited to appellant in the same fund, awarded to her. An automobile valued at $1,600, subject to an encumbrance of $835, was awarded to respondent.

These facts support the view that the trial judge rendered his decision in an earnest and conscientious endeavor to ascertain, declare and confirm the respective rights and duties of the parties under the law. Even if he were mistaken in his concept of the applicable provisions of law in some respects, that would be judicial error, correctible upon appeal by a party aggrieved. It would not render the trial "unfair."

Appellant directs attention to no improper ruling during the trial, nor curtailment of issues by the judge in the presentation of her case. We find none such in the record, which we have carefully examined. The question presented is one of fact. Our review of the record convinces us that the trial judge accorded appellant a fair trial and rendered judgment upon the facts and under the law as he honestly and conscientiously found them to be. The principles of law applicable when such a question as this is raised, are ex-

haustively expounded in a recent decision of our Supreme Court, in *Weil* v. *Weil*, 37 Cal.2d 770, at 774-786 [236 P.2d 159].

The interlocutory decree is modified by striking therefrom all words presently disposing of the community property and inserting words to the effect that upon the entering of the final decree the parties are entitled to have assigned to them the portions of the community property mentioned in the decree. As so modified, the judgment is affirmed as of the date of its entry.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied January 26, 1952, and appellant's petition for a hearing by the Supreme Court was denied February 25, 1952.