[No. 6,573.—Department One.]

# IN THE MATTER OF THE ESTATE OF ADA WARDELL.

ESTATES OF DECEASED PERSONS — ILLEGITIMATE CHILD — BASTARD—SUCCESSION—WILL.—An illegitimate child unintentionally omitted from the will of its mother is entitled to share in the estate in like manner as if legitimate.

APPEAL from an order in the Probate Court of the City and County of San Francisco. MYRICK, J.

*Van Dyke & Powell,* for Appellants Frank A. and Edward C. Bartlett.

When the words denoting kindred are used either in laws or in private instruments, they include none but legitimate kindred. (*Kent* v. *Barker,* 2 Gray, 537; *McCool* v. *Smith,* 1 Black, 459; 2 Kent Com. 212, 213; 4 Kent Com. 413, 414; 3 Cruise Digest, tit. 29, ch. 2, § 8; 2 Domat, 26, 49, 187, 211, 280, 283; *Bagley* v. *Mollard,* 1 Russ. & M. 575; 7 Ves. 458; 5 Scott N. R. 990; *Wilkinson* v. *Adams,* 1 Ves. & B. 422; *Swain* v. *Kennedy,* id. 469; *Beachcroft* v. *Beachcroft,* 1 Madd. 234; *Sherman* v. *Angell,* 1 Baily Eq. R. 351; *Collins* v. *Hoxie,* 9 Paige, 88; *Durant* v. *Friend,* 11 Eng. Law & Eq. 2; *Owen* v. *Bryant,* 13 id. 217; *Cooley* v. *Dewey,* 4 Pick. 93.)

By the rules of the common law, terms of kindred when used in a statute include only those who are legitimate, unless a different intention is clearly manifest. The proposition is too clear to require either argument or authority to sustain it.

Whenever the Legislature uses a term known to the common law, without defining it, it is presumed to use it with the meaning which the common law attached to it.

The Legislature of this State has made no attempt to define or limit or qualify the term "child," or to change in the least its common-law signification. On the contrary, the law-makers have uniformly made use of the term "*illegitimate child*" where such is intended, and the word "child" is nowhere used indiscriminately for legitimate and illegitimate children. In the title upon succession, Civil Code, § 1386, provides for the *child* or *children* of a deceased intestate. If the word "*child*" or "*chil-*

*dren*" was intended by the Legislature to include illegitimate children, why was it necessary to provide in the next section (1387) that *every illegitimate child in all cases is an heir of its mother ?*

In the absence of § 1387, above referred to, which provides when, how, and in what cases an illegitimate child shall be the heir of an intestate, would it be seriously contended that illegitimate children would stand upon the same footing with reference to succession as legitimate children? If not, the word "child" as used in § 1386 does not include illegitimate children.

And again: the first provision of subdivision 1 of § 1386 contains a fair example of the use of the word "*child.*" It reads as follows: "If the decedent leaves a surviving husband or wife, and only one *child, or the lawful issue of one child,*" distribution shall be made in equal shares, etc. Could the Legislature have intended that the *child* might be illegitimate and yet take, while the *issue of the child* in order to take must be legitimate?

It is also to be observed that the provision of § 1387, making an illegitimate child the heir of the mother, does not legitimize the child ; for the same section provides that " he does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral," etc., unless the child has been legitimated.

Of course, by virtue of the express provision in § 1387, the word "child," wherever found in the title upon succession, will include an illegitimate child, *when considered with reference to an intestate mother.* It is unnecessary to mention so patent a fact as that § 1387 has no application to cases of testamentary disposition.

Where it was the design in our Codes to change the well-defined common-law meaning of terms, the same has been, as it always must be, clearly expressed. We find an example of this in § 1334, Civil Code, in the chapter on interpretation of wills, where it is provided, in connection with said § 1387, that a testamentary disposition by a mother to " heirs," " relatives," " next of kin," etc., would include an illegitimate child ; but it is nowhere provided that such a disposition to her " children " would include illegitimate children. Is it not fair to assume,

that, if it had been the intention to change the well-known legal meaning of the word " children," it would have been included in this section ? For the only reason that made this section of definitions necessary was the common-law rule *that words denoting kindred include none but legitimate kindred.*

Although it is within the power of the judiciary to declare the action of the Legislature unconstitutional, the courts have no power to avoid the effects of non-action. (*Myers* v. *English,* 9 Cal. 349.)

In the State of Massachusetts, the statute with reference to illegitimate children is the same as ours. An illegitimate child takes in all cases from its intestate mother, and the provision with reference to pretermitted children is precisely similar to § 1307 under consideration. The statute of distribution, also, of the State of Massachusetts is borrowed from the civil law as well as ours; but this cannot be construed to have repealed the common law with reference to the meaning of the word " child." (*Cooley* v. *Dewey,* 4 Pick. 93.)

In the case hereinbefore mentioned of *Kent* v. *Barker,* 2 Gray, 537, where the facts were the same as those in the case at bar, it was held that the word " child " did not include illegitimate children. The Court says: " As to the common law, illegitimate children have no rights of inheritance or descent; whatever they take is by force of the statutes. The statutes have provided for cases of inheritance for the descent of intestate estates. They have made no provision for cases where there is an omission by a testator to provide in his will for an illegitimate child. Whether the same reasons apply to the case of an omission of an illegitimate, and the same results should follow, is a question for the Legislature, and not for the Courts."

*George N. Williams,* for Appellant Benjamin A. Wardell.

It will probably be conceded that the legal interpretation of " child " or " children," when used in a statute (especially such as relate to transmission of property through kindred), and in formal instruments, denotes legitimate offspring only. (1 Bouvier's Law Dic. 263 ; 1 Redfield on Wills, 3rd ed. *654, *et seq.*)

The point of controversy is, whether the Legislature, in § 1307, has used the words in their ordinary or legal sense herein.

It will be borne in mind that the same latitude of inference as to intent cannot be indulged in when the question is what was the design of a Legislature, as is admissible in searching for the intent of a private individual in the use of particular language. It being understood that the former keeps in view the strict legal meaning of words, and thus intends them, while the intent of the latter is left to be gathered from extrinsic evidence and circumstances consistent with any rendering of which the words are admissible.

What, then, is there to indicate that the Legislature designed to enlarge the legal meaning of the words in this particular instance, and use them in a different sense from the same words when employed in all the other statutes upon kindred subjects? As claimed by the respondent, it is mainly that § 1307 is to be read in connection with the statutes on succession, and the illegitimate child being, for the purposes of those statutes, made heir of the mother to a qualified extent, arguendo the provision of § 1307 includes illegitimate children.

We think it is a complete answer to this position, that where there is a will there is no succession. Observe the first sections under title Succession, § 1383: "Succession is the coming in of another to take the property of one who dies without disposing of it by will "; and § 1384: " The property of one who dies without disposing of it by will passes," etc.

But looking to the *status* of the illegitimate heir of the mother, under § 1387, title Succession, when transplanted into a claimant under § 1307, title Wills, we find that under the former, although he may inherit from the mother directly, he can take nothing from her kindred, either lineally or collaterally. Now, § 1307 provides for the " issue of a deceased child," which, from the respondent's standpoint, necessarily includes *illegitimate* issue. What would be the condition of an illegitimate child of a deceased illegitimate child claiming under § 1307? According to the respondent, such child would be entitled to a distributive share of the grandmother's estate, as " issue of a deceased child," within the section. But under the statute of succession, § 1387, upon which the respondent rests the strength of his argument, such a child would take nothing. Not being allowed to represent its parents, it would be an absolute nobody—a *nullius filius*.

The statute (§ 1307) was intended to guard against oversight and obliviousness on the part of the testator at a time when, preoccupied with the near approach of death, he might be supposed to have overlooked his heir. The same idea in substance is embodied in Jarman's fifth rule of construction for wills: "That the heir is not to be disinherited without an express devise or necessary implication."

Practically speaking, it strikes the mind at once that to say because a testator has omitted to mention his lawful heir in his will, therefore he intended to disinherit him, is a violent and unjustifiable conclusion. On the other hand, it seems quite natural and probable that illegitimate children as such should not be mentioned in wills, and that in most cases there would be a desire to avoid doing so if provision for them could otherwise be made.

*M. B. Blake*, for Respondent.

The general rule that common-law words, when found in a statute, are to be given their common-law construction, is in practice often departed from. Such construction is never to be applied where (as in the statute here under review) it would be repugnant to the general history and spirit of our legislation, or lead to obviously absurd and unjust results.

The word "child," taken in its ordinary, natural, and primary sense, includes *illegitimate* as well as legitimate offsprings. It is not a technical word, nor has it acquired such a fixed and invariable meaning in law as can control its ordinary signification. The narrow common-law meaning is in no sense "appropriate" in our times or in accordance with our public policy. The cases where courts have held to it, in construction of statutes and of wills, have all arisen where the rule was in force that everything in derogation of the common law is to be strictly construed; and this rule has been the foundation of the decisions. (*Pratt* v. *Atwood*, 108 Mass. 41.)

The words "child" and "children" in Civil Code, § 1307, must be read in connection with the title on succession, and being unqualified, must include any and all kinds of children provided for in such title, illegitimate as well as legitimate.

It appears on the face of our laws regulating succession and

other transmission of property, that the word "child," when unqualified, is generally used in its broad and ordinary sense, as inclusive of illegitimates (at all events, as far as legally made capable of inheriting), and that the strict common-law construction cannot be applied without gross absurdity, confusion, and injustice.

Civil Code, §§ 1386 and 1387, read together, constitute substantially the law of succession — the former declaring the general rule, and the latter the qualifications upon it. Further special provisions, limiting the generality of § 1386, are made in subsequent sections (e. g., §§ 1388, 1394, etc.).

McKEE, J.:

Ada Wardell, a resident of the City and County of San Francisco, died February 25th, 1876, leaving, surviving her, her husband, two sons, and a daughter. Before her death, she had made her last will and testament, whereby she disposed of all her real and personal estate to her husband for life, and the remainder to her two sons. No provision was made in the will for the daughter. Her name was not mentioned in it, and it does not appear by anything in the will itself that the omission was intentional. The daughter was born out of lawful wedlock; she had never been legitimated by the subsequent intermarriage of her parents, or by acknowledgment or adoption of her father. Having been omitted from the will, she resisted the disposition of the property made by it, claiming that, as pretermitted heir of her mother, she was entitled to a distributive share in the estate. The Probate Court recognized the validity of the claim, and in the final distribution of the estate adjudged her to be entitled to the same distributive share in the estate of her deceased mother as though the mother had died intestate.

The sons appealed from this decision, and claim that the daughter of their deceased mother, being an illegitimate child, is not entitled to succeed by testamentary succession to any portion of her estate.

But by § 1307 of the Civil Code it is provided, that "when any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional. such child, or the issue of such

child, must have the same share in the estate of the testator as if he had died intestate." In other words, the child succeeds to the same portion of the testator's real and personal property that he would have succeeded to if the testator had died intestate. (§ 1306, Civ. Code.) He takes by succession, like one born after the making of the will.

It is contended, however, that the word " children," as used in this section, includes only legitimate children, because it is a rule of construction that whenever legislatures use a term without defining it, which is well known in the English law, they must be supposed to use it in the sense in which it is understood in the English law ; and as the Legislature has made no attempt to define, limit, or qualify the term, or to change in the least its common-law signification, therefore, the term must mean only those born in lawful wedlock.

It is well settled that at common law the word " children " means those born in lawful wedlock; and such, indeed, has been its legal meaning in every known system of law. Those only were considered as legitimate whose blood was traceable to the legal marriage of a common pair. A person not born in lawful wedlock was not regarded as a member of the group known in law as the family ; and consequently was not entitled to the privileges of members of the family, or to any rights of inheritance or succession. Yet every person, whether born in lawful wedlock or not, was recognized as a member of the community, and his relations to the community, and to each member of it, and in respect of the things appertaining to it, were matters which were regulated by law. Indeed, the object of all law is to ascertain and settle the *status* of individuals in the social system, and to regulate the rights and duties of which each is the center.

In relation to children, the common law was a rule of succession to an estate. No one could succeed to an estate in land who was not born in lawful wedlock. Such continued to be the rigorous rule of that law until the reign of Edward III., when the principle of descent was changed in favor of bastards whose parents afterwards intermarried. This modification of the condition of such children under the common law was effected, as Blackstone says, " by the transcendant power of an act of Par-

liament." And by the same agency the *status* of persons who had no rights of inheritance or succession under the common law, has been, under modern law, greatly changed. So that now persons who, as bastards, had no rights of inheritance, are, under the law in most, if not all, of the States of the Union, capable of inheriting and transmitting inheritance. The legal meaning of the word " children " has, therefore, been greatly enlarged from what it was at common law.

If Courts were now to restrict the word to its common-law meaning, all children born of an unlawful marriage, all children by adoption or acknowledgment of their father, and all children whose parents intermarried subsequent to their birth, would be excluded from rights of inheritance or succession. But by statute law, the offspring of marriages null in law (§ 84, Civ. Code), children born out of lawful wedlock whose parents subsequently intermarried (§ 215, id.), and children by acknowledgment or adoption of their father (§§ 224, 227, 228, and 230, id.), are all legitimate. These, although incapacitated at common law from succeeding to any rights of their father, are regarded for all purposes as legitimate from the time of their birth. Between them and the legitimate offspring of the same parents the law has established cognatic relations, and either is as capable as the other of exercising inheritable rights. Hence the term " children," as used in § 1307 of the law of succession, must relate to *status*, not to origin—to the capacity to inherit, not to the legality of the relations which may have existed between those of whom they may have been begotten. The word has, therefore, a statutory and not a common-law meaning; and its meaning includes all children upon whom has been conferred by law the capacity of inheritance.

And the State *has* regulated the .inheritable capacity of all children illegitimate by birth. Those who have not been legitimated by the will of their father, in any of the modes authorized by law, have been rendered capable of inheriting from their mother. By § 1387 of the Civil Code, it is declared that " every illegitimate child is, in all cases, an heir of his. mother, and inherits her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock." Speaking of such a law passed by the State of Maryland, Mr.

Chief Justice Taney has said : " It seems to have been supposed by the Legislature, that, as there could have been no doubt of the relation which the mother bears towards her illegitimate children, the reasons of policy, which must always preclude such children from claiming the inheritance of any one upon the ground that he was their father, do not apply to the property of the mother. To this extent, therefore, the right to inherit is given by the statute; and it would appear to have been given upon the principle that it is unjust to punish the offspring for the crime of the parents."

The respondent was, therefore, though illegitimate by birth, endowed by the statute with inheritable blood. She possessed the same heritable rights as heir of her mother as if born in lawful wedlock. (*Rodgers* v. *Weller*, 5 Biss. 166 ; *Garland* v. *Harrison*, 8 Leigh, 368 ; *Bennett* v. *Toler*, 15 Gratt. 588.) As an heir of her mother, she differed nothing in law from the other children, so far as the rights of inheritance which had been conferred upon her by law. To the full extent of those rights she was entitled to all the privileges and immunities of heirship. If her mother had died intestate, her right to a distributive share of the estate would have been unquestionable. Dying testate, the legal relation between mother and daughter was not impaired or destroyed. The latter was still a legitimate heir, as much so as the children legitimate by birth, for the law made her an heir to the same extent " as if she had been born in lawful wedlock."

It is not to be supposed that the law which attached to her person the rights and duties of inheritance, and endowed her with the capacity to exercise them, meant to leave her a bastard, under the disabilities of the common law, if the mother unintentionally omitted to make provision for her in her will. When placed by law in the state and condition of heir, and invested with the character and capacity of heir, *all* the rights, privileges, and legal consequences incident to that relation were tacitly conferred upon her. (*Swanson* v. *Swanson*, 2 Swan, 446.) And in the presence of the will of her mother in which her name was omitted, she stood clothed in law with the same rights to inherit as any one of the legitimate children would have stood had he been omitted. The omission did not affect

her legal rights, unless it was expressed on the face of the will to have been intentional. But no such intention appears in the will; the omission was therefore unintentional. (*Estate of Garraud*, 35 Cal. 336; *Estate of Utz*, 43 id. 200; *Bush* v. *Lindsey*, 44 id. 121.) And, as pretermitted heir of her mother, the respondent was entitled to a distributive share of the estate.

Judgment affirmed.

Ross, J., and McKinstry, J., concurred.