[L. A. No. 4124. Department Two.—June 4, 1915.]

# In the Matter of the Guardianship of ROSA MICHELS, an Infant.

GUARDIANSHIP OF MINORS—ABANDONED CHILD—RIGHTS OF PARENTS.— A decree made under section 224 of the Civil Code that a child is an abandoned child judicially strips the parents of the then present right to the guardianship, care, custody, and control of the child, but if no action looking toward adoption or guardianship is taken, such decree does not destroy the right of a parent at a subsequent time upon a proper showing to be appointed guardian of such child.

ID.—POWERS AND DUTIES OF THE STATE—ABANDONED CHILD.—In the exercise by the state of its duty to guide and guard its helpless young, it is proper that it should make provision for abandoned children and to provide by process of law a forum for determining whether a child is abandoned, and, upon determining this question, to provide for the future care of the child by adoption or guardianship, and to determine under what circumstances the rights of parents to such guardianship shall cease and what acts shall constitute abandonment of the child.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge.

The facts are stated in the opinion of the court.

Joseph Scott, for Appellants.

Schweitzer & Hutton, for Respondent.

HENSHAW, J.—Petitioners who are likewise the appellants herein, are the father and mother of Rosa Michels, a female child, aged about seven years. They petitioned the superior court to be appointed guardians of the person of their infant daughter. Their petition showed that they are husband and wife and that the child was born in lawful wedlock; that some years previously they came to Los Angeles with their five children, the eldest then about ten years of age, the youngest Rosa, then about one year of age. At that time Rosa was crippled and unable to stand. A physician told the parents that the child should be sent to a hospital for treatment, and the child was sent to the

Children's Hospital, a charitable institution, where she was taken care of without charge. She remained there twelve months—eleven of those months upon a stretcher. During that period the father called upon her frequently. The mother was unable to do so, being herself engrossed in her household duties, being ill, and during that period giving birth to another child. Miss Verna Shaw was a nurse in the Children's Hospital and became interested in little Rosa. Verna Shaw sought to be allowed to adopt her. The father declined to accede to her request, but permitted her to take the child to her parents' ranch in the neighborhood of Los Angeles, where it was represented the child would improve in health, with pure air and fresh milk. It was agreed between the parents and Verna Shaw that she should take the child, keep her at the ranch for a period of two years, and then return her to her parents. The child was taken to the ranch. Thereafter Verna Shaw visited the petitioners and told them the child was doing well. They asked to see it, but Verna Shaw replied that it was better that the child be not brought to the city. Receiving no more visits from Verna Shaw the petitioners called upon her at the Children's Hospital and were told that she had left the hospital and that her address was unknown. The child was taken to the country in the early part of the year 1911, and they did not learn where she was until March, 1914, when they took steps to regain her custody. Upon learning that petitioners desired to secure possession of the child, Verna Shaw proceeded to have the child declared by the juvenile court to be an abandoned child, and for that purpose, on or about the first of May, 1914, filed in the superior court a petition under the act concerning dependent and delinquent minor children (Stats. 1909, p. 213, Civ. Code, sec. 224), in which petition it was declared that the infant, Rosa Michels, was on the twenty-fourth day of December, 1910, left in the care and custody of Verna Shaw by the parents of the minor without the parents making any provision for the minor's support. A hearing was had in the juvenile department of the superior court before the Hon. Fred H. Taft, and the superior court determined and declared Rosa Michels to be an abandoned child. Petitioners were present at the hearing in person and by their attorney, and introduced evidence showing that they had not abandoned the child and never intended to abandon the child,·

and after the court made its order declaring the child to be an abandoned child, petitioners instructed their attorney to appeal from this order and decree. Through the oversight, inadvertence, or neglect of their attorney, their appeal was not taken. The petition then asserts that section 224 of the Civil Code, by virtue of which the proceedings resulting in the declaration that the child was an abandoned child were had, is null and void as being in violation of sections 1 and 13 of article I of the constitution of the state of California, and of the fifth, fourteenth, and eighth amendments to the constitution of the United States.

The petitioners further declare that they are the owners of a fruit and grocery store, the income from which suffices to provide a comfortable living for themselves and all their children; that while the order of the superior court declared the child to be an abandoned child, neither that nor any other order of the court provided a guardian for the child, nor gave it other parents by adoption. It is then averred, touching the spiritual welfare of the child, that section 29 of the Juvenile Act provides that children coming within the purview of the act shall be placed "with people of the same or similar religious belief"; that petitioners are members of the Roman Catholic Church; that Verna Shaw is a young unmarried woman without a home of her own, is not of the Roman Catholic faith, is obliged to and does maintain herself by her own exertions as a nurse in the office of a physician, and is compelled to leave the care of the child to relatives and other persons not of the Roman Catholic faith.

A demurrer was interposed to this petition and the hearing was before the same judge who presided at the hearing of the petition to have the infant declared an abandoned child. The court sustained the demurrer and declared that the "petition does not state facts sufficient to require the appointment of petitioners as guardians of the person of said infant."

The order and the only order of the court entered in the matter of the proceedings had under section 224 of the Civil Code is puzzling in its language. It is in the following words: "It is stipulated in open court that the petition (of Verna Shaw) be denied and that further evidence might be taken at this time, notice being waived, all parties agreeing thereto. The court ordered that the child be declared aban-

doned.'' It is not clear from this why, if the petition was denied, the child should have been declared an abandoned child. But for the purposes of this consideration, this order adjudging the child to be an abandoned child may be taken as satisfactory and complete. So taking it, we may come directly to the consideration of certain questions here involved. Certain, we say, because the demands of this case do not require that all of appellants' arguments, and in particular those against the constitutionality of section 224 of the Civil Code, should be considered. Upon the general proposition, suffice it to say this, that it is unquestionably a part of the power as well as a part of the duty of the state to guide and guard its helpless young. In the exercise of that duty it is quite proper for the state to make provision for the custody, care, and maintenance of abandoned children, and in so doing to provide process of law and a forum for the determination of the question whether or not a child is an abandoned child. Upon a determination of abandonment it is equally within the power and the duty of the state to provide for the care and nurture of the child in the future, and proceedings in guardianship and proceedings in adoption may be and by our law are based upon decrees of abandonment. And, finally, it is within the power of the state to declare what sins and acts of omission or commission shall constitute abandonment by the parent or parents. Unquestionably due process of law demands some sufficient notice to the parents of the proceedings about to be taken, with an opportunity to the parents to be heard upon the issue. But so far as concerns this case it appears by the petition that the parents not only received this notice, but responded to it, and were present in court with their attorney at the hearing.

Unquestionably also a decree that a child is an abandoned child, duly given after proceedings duly had, is a final adjudication of the *status* of this child as of the date of the decree. But the underlying question in this case is how far reaching and how conclusive upon the future rights of the parents is such a decree of abandonment, treating it, as here we do, as a final, valid, subsisting decree.

Respondent argues broadly that the effect of the decree is forever to destroy parental rights in both their characteristics—to destroy the property right which the parent has in the child, and to destroy the natural right to the care, cus-

tody, nurture, and love of the offspring; that the child having been decreed to be an abandoned child by an order which has become final, the present petition of the parents for letters of guardianship is to be treated as the unwarranted intrusion of strangers.

This view of the scope and meaning of a simple decree that a child has been abandoned by its parents is altogether beyond the reason of the law and so beyond the law. It is no more in contemplation of the law that parents should forever be deprived of the custody of a child because of a judgment of abandonment, than it is within the contemplation or power of the law to say that the decree of abandonment extirpates and destroys all parental affection for the child. What a decree of abandonment amounts to is defined by section 246, subdivision 4 of the Civil Code. It is a decree which judicially strips the parents of the then present right to the guardianship, care, custody, and control of the child. If other provision, thereafter, shall have been made for such custody and control, it may be that upon hearing, the court will not disturb such custody, but this does not mean that the parents shall not be heard. We are not in this consideration confronted with the case of a child which, after a decree of abandonment, has been either adopted or provided with a guardian, and, as well said in *Matter of Forrester,* 162 Cal. 493, [123 Pac. 283] : ''The past failure of a parent to provide for his child may well coexist with a present ability to fully discharge all the duties of guardianship.''

While the law has earnestly at heart the welfare of a child, yet, as pointed out in the same case, it will not even under such considerations deprive the natural guardians of their rights. It is no light thing to endeavor to destroy the love of offspring which nature has implanted in every normal human being, nor does the law contemplate the doing of such a thing. It proposes merely to lend its guiding hand to helpless youth who have been deserted or abandoned from any cause. But it never means to say that if the cause has been removed, in other words, if the parents can show their present competency, willingness, and ability to support and maintain their offspring, that they shall not be heard merely because some earlier decree that they have abandoned their child is supposed to have erected insurmountable barriers, and absolutely to have destroyed all their rights. Upon an application by

the parents under such circumstances, if intervening rights following the decree of abandonment have come in, as if a guardian of the person has been appointed, or if the child has been formally adopted, these matters may be shown and will be considered upon the hearing. But in every such case, under the dictates of the law, which would be barbarous otherwise, but which is in truth humane, the parents are entitled to their day in court and to such a showing for the recovery of their offspring as they are able to make.

It was error, therefore, for the court to sustain a general demurrer to this petition, and the judgment is therefore reversed with directions to the trial court to overrule the demurrer and to allow any person in interest to appear and plead to the merits of appellants' petition.

Lorigan, J., and Melvin, J., concurred.