[S. F. No. 7413. Department Two.—July 26, 1916.]

In the Matter of the Guardianship of LEW CHOY FOON, a Minor.

GUARDIAN AND WARD—MOTHER UNFIT TO HAVE CUSTODY OF CHILD—EVIDENCE—ABANDONMENT.—On an appeal by the mother of a minor girl from an order appointing as guardians of the child the persons with whom she had lived since her birth, the evidence is held to sustain the finding of the trial court that the mother was an unfit person to have the custody of the child, and that the child had been abandoned by the mother.

ID.—APPEAL—CONFLICT OF EVIDENCE—FINDINGS OF TRIAL COURT.—In guardianship matters, it is the peculiar function of the trial court

to pass upon the questions of fact in dispute upon which there is a conflict of testimony, and its conclusions thereon will not be interfered with on appeal.

ID.—WELFARE OF CHILD—COMPARATIVE MERITS OF LIFE IN CHARITABLE INSTITUTION AND WITH INDIVIDUALS.—Where the mother's application for guardianship disclosed the fact that she would be required to leave the child in the care of a charitable institution until such time as she might be able to support her, it was the duty of the trial court, under section 246 of the Civil Code, to weigh the comparative benefit to the child, in respect to her temporal, mental, and moral welfare, which might result from residence in an eleemosynary institution or a continuance of the life with the foster-parents.

ID.—JUVENILE COURT—FINDING THAT CHILD WAS NOT ABANDONED—SUBSEQUENT PROCEEDING IN GUARDIANSHIP.—The decision of the judge of the juvenile court in a proceeding to have the child declared an abandoned child, that she was not an abandoned child, is not binding upon the superior court in a subsequent proceeding in guardianship.

APPEAL from an order of the Superior Court of the City and County of San Francisco appointing guardians of the person of a minor. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Harding & Monroe, for Appellant.

Costello & Costello, for Respondent.

MELVIN, J.—Yoke Won, mother of a minor child, Lew Choy Foon, appeals from an order appointing Lew Get and Mar Shee guardians of the person of said minor.

The appellant insists that there was no evidence to support the finding that the mother was an unfit person to have the custody of the child, and that the unfitness of Lew Get and his wife Mar Shee was amply established. An examination of the record discloses a sharp conflict of evidence on almost every material point in issue. Certain matters, however, appear without denial. One is that when the child was born the mother was living the life of a prostitute. There was evidence tending to show that she was a slave girl and an unwilling inmate of the brothel in which her baby was born. It is undisputed that Mar Shee took the baby when she was three days old; that ever since that time the little girl has

lived with Lew Get and Mar Shee; that they have provided for her; that the foster-parents have been married according to American custom since the child went to live with them; and that they have exhibited at all times a deep affection for the little one. There was evidence tending to show that after living for some time in the house in which her baby had been born, Yoke Won was redeemed by a man named Lee Suey, and after living with him as his second wife or concubine for some time, part of that period away from San Francisco, she heard of the Presbyterian Mission, situated at No. 920 Sacramento Street, in the city and county of San Francisco. She took refuge there and resided at the mission at the time when the guardianship matter was heard.

It was undisputed that the mother was possessed of no means of her own, but the charitable people in charge of the mission were willing to take the child until such time as the mother might marry some good man or secure some employment whereby she might support herself and the little girl. It is evident that Miss Cameron, the superintendent of the Presbyterian Mission, sincerely believed in the full and permanent reformation of Yoke Won, and in the unworthiness of the foster-parents. Moved by such belief she sought to rescue the little one from such environment, but it was the peculiar function of the learned judge of the superior court before whom the hearing took place to pass upon the questions of fact in dispute upon which there was a conflict of testimony, and we cannot, of course, interfere with his conclusions adopted after a full and patient hearing of the evidence. It would be hard to find in any record a more radical conflict. According to witnesses who appeared on behalf of the mother, Lew Get and Mar Shee were absolutely unworthy and unfit to be intrusted with the care and nurture of a little girl. On the other hand, witnesses produced by the petitioner described Lew Get as a prosperous merchant of good character, his wife as an excellent woman, and their home as one of refinement. Indeed, there seems to have been no doubt of the ample material comforts which they were able to give the child, but the mother and her sponsors were apparently concerned about the moral welfare of the little one. This question was, as we have indicated, one which the lower court

could solve but one which we cannot determine by reference to the conflicting evidence.

But we are reminded of this court's frequent refusals to deprive parents of the custody of children merely because of comparative poverty, and it is argued that this young mother, rescued from a life of degradation, should be permitted to rear her daughter even though she could not give the child the material comforts bestowed by Lew Get and Mar Shee. This court has resolutely refused to deprive parents of their children upon considerations of comparative luxury or poverty, but the learned judge of the superior court, who had an opportunity to observe the young mother and to hear her testimony and that of the other witnesses, was in a position to decide whether or not her reformation was complete. He could, and doubtless did, also weigh the comparative benefit to the child, in respect to her temporal, mental, and moral welfare, which might result from residence in an eleemosynary institution or a continuance of the life with the foster-parents. This was his duty under section 246 of the Civil Code, and he resolved the question before him in favor of the petitioners.

There is a square conflict of evidence on the question of abandonment. The mother testified that the baby was given to Mar Shee by the keeper of the house in which she resided and that she, being a slave girl, had no voice in the matter. Mar Shee, on the contrary, testified that the young mother gave her the child and asked her to raise it. She promised to take and support the infant. Dr. Lafontaine testified that she attended Yoke Won when the child was born. The mother refused to have anything to do with the infant, would not nurse it, and said, in Chinese, "I don't like it." There was also evidence to the effect that while she was living with Lee Suey the mother made no effort to see her child, although she was on friendly terms with Lew Get and Mar Shee. This testimony was sufficient to support the finding of the court that the minor was abandoned and cast off by the mother.

Appellant introduced in evidence an opinion written by the learned judge of the juvenile court in a proceeding to have Lew Choy Foon declared an abandoned child. He held that she was not an abandoned child, but such decision was not binding upon the superior court in a subsequent proceeding

in guardianship. (*In re Guardianship of Michels*, 170 Cal. 339, [149 Pac. 587].)

It follows that the order from which the appeal is taken must be affirmed, and it is so ordered.

Henshaw, J., and Lorigan, J., concurred.