[Civ. Nos. 24463, 24633. Second Dist., Div. Three. Nov. 28, 1960.]

ELEANORA MACKIE, Respondent, v. MALCOLM MACKIE, Appellant, and consolidated appeal.

Malcolm Mackie, in pro. per., for Appellant.

Edwards & Edwards and Eric A. Ashton for Respondent.

FORD, J.—Feeling aggrieved because of the course taken by his wife's action against him for a divorce, the appellant has undertaken two appeals. In one, he states that he "appeals from the Orders made and entered herein on the 17th day of September, and from the Restraining Order, as follows: 'Defendant is to remove himself from the family home by 6:00 P. M. on September 20, 1959.'" In the other, his notice of appeal is of an omnibus nature in that he "appeals from the orders entering Defaults 1 and 2, the Judgment, the intermediate rulings, proceedings and Orders involving the merits and/or affecting the judgment and substantially affecting the rights of this Defendant in the above entitled action, and the Order after judgment *in re* contempt."

While the record as originally presented to us contained no order after judgment with respect to any alleged contempt except orders to show cause,[1] on our own motion we have

---

[1] The appellant's reply brief indicates that he was not adjudged to be in contempt.

augmented the record by having the file of the superior court transmitted to this court pursuant to rule 12 of the Rules on Appeal. The minutes of the court for February 5, 1960, contain the following entry: "Charge of contempt against defendant is dismissed." In any event, no appealable order is involved. (*Tripp* v. *Tripp*, 190 Cal. 201, 202 [211 P. 225]; *Travis* v. *Travis*, 89 Cal.App.2d 291 [200 P.2d 843].) As to the remaining portion of the second notice of appeal, the matters mentioned in addition to the judgment are not separately appealable but are reviewable on the appeal from the judgment (see 3 Witkin, California Procedure, 2162-2164); consequently, the appeal is in essence from the judgment.

The chronicle of the case is as follows: 1. On July 21, 1959, Mrs. Mackie filed in the Glendale branch of the superior court her complaint for divorce in which she alleged that the community property of the parties consisted of a family home and stated as her ground for seeking a divorce that Mr. Mackie had treated her "in a cruel and inhuman manner" whereby she was caused "grievous mental and physical pain and suffering." 2. On July 25, 1959, there was service of the summons on Mr. Mackie. 3. On August 3, 1959, the defendant, Mr. Mackie, acting in propria persona, filed a demurrer to the complaint. 4. The default of the defendant having been entered by mistake on August 13, 1959, an order was made on August 24, 1959, vacating and setting aside such default. 5. On September 2, 1959, the defendant filed an affidavit in which he stated: "That the Judge before whom the hearings in the aforesaid action are pending is prejudiced against the interest of this party so that affiant cannot or believes that he cannot have a fair and impartial hearing before said judge." 6. In the minutes of the court for September 2, 1959, it was stated that the defendant's motion for a change of venue was denied without prejudice and that his demurrer was sustained. 7. On September 10, 1959, an amended complaint for divorce was filed in which the allegations with respect to the community property were unchanged but more specific allegations as to physical and mental cruelty were made. In the prayer, part of the relief asked was that "the community property of the parties be awarded to the plaintiff as her sole and separate property." That complaint was served on the defendant by mail on September 10, 1959, the envelope being addressed to him at 507 North Kenwood, Glendale, California, the address given by him on the documents embodying his demurrer and his "affidavit for disqualification" filed respectively on August

3, 1959, and September 2, 1959. 8. On September 11, 1959, the court issued a restraining order and an order that the defendant show cause in the Glendale branch of the court on September 17, 1959, with respect to certain matters which are stated as follows: "(c) Pending the trial of this action you should not be, and pending the hearing on this Order, you are, enjoined and restrained from: 1. Annoying, molesting or in any way injuring the plaintiff. (d) Why you should not be removed from the family dwelling at 507 North Kenwood, Glendale 6, California." The affidavit in support thereof contained the following language: "Defendant has repeatedly used violence on plaintiff. Defendant has given plaintiff four black eyes, has punched out two of plaintiff's teeth and has choked her into unconsciousness. The last black eye was given plaintiff in August of 1958. Since then plaintiff has been in a state of terror and has avoided defendant whenever possible. Defendant has so terrorized plaintiff that she is afraid to spend the night in her own house and must currently stay in a hotel incurring expenses which she is not in a position to afford." Her age was stated as being 77 years and that of the defendant as being 70 years. 9. An affidavit of service filed on September 17, 1959, contains the statement that the "Order to Show Cause and Affidavit in re Restraining Order" were served on the defendant by mail, the envelope being addressed to him at 507 North Kenwood, Glendale, California. 10. On September 15, 1959, the defendant filed a notice that on September 17, 1959, in department one of the superior court at the courthouse in the city of Los Angeles (all matters prior thereto having been in the Glendale branch of the court) he would make a motion "for an order to quash Service of Order To Cause [*sic*] and Affidavit *in re* Restraining Order, (1) for lack of Personal Service and (2) failure of the copy to show a signature of any judicial officer nor a date of making the Order." On September 17, 1959, that matter was "ordered off calendar." 11. On September 17, 1959, in the Glendale branch of the court, the defendant not appearing, an order was made which was set forth in the minutes as follows: "The restraining order *re* annoying is to remain in full force and effect. Defendant is to remove himself from the family home by 6:00 p. m. on September 20, 1959." The order was made by a court commissioner acting as a judge pro tempore "in accordance with Article Six, Section Five of the Constitution of said State, and further in accordance with an appointment of said Commissioner by the Presiding Judge of the Superior

Court as Judge pro tempore heretofore made under the authority of Article Six, Section Fourteen of said Constitution and Section 259a, Subdivision 4, of the Code of Civil Procedure of the said State,'' pursuant to a ''stipulation'' which, however, was signed only by the attorney for the plaintiff. A formal order was signed by the judge pro tempore on October 22, 1959. 12. On September 21, 1959, the defendant filed a notice that on October 6, 1959, in department one of the superior court he would make a motion to have the case transferred to a department other than the Glendale branch of the court, being ''a second motion where the denial of the first motion was expressly made 'without prejudice.' '' An affidavit in support thereof was filed on October 2, 1959, in which in substance he charged that an organization known as Property Research Association, of which he was not a member but which had requested him to sign a ''covenant'' with respect to the property involved in the action, had ''conspired against the constitutional rights of citizens of the United States in the territory surrounding the City of Glendale.'' That motion was granted on October 6, 1959, in department one (the department of the presiding judge of the superior court) although the default of the defendant, as will be hereafter noted, had been entered. The plaintiff apparently did not appear in opposition to the motion. 13. On September 28, 1959, the clerk of the court entered the default of the defendant because of his failure to answer the amended complaint within the time allowed by law. 14. On October 8, 1959, in the Glendale branch of the superior court, an interlocutory judgment of divorce was granted to the plaintiff. Thereunder, the ''community property of the parties consisting of real property,'' the legal description of which was stated, was ''awarded to plaintiff as her sole and separate property.'' 15. On November 4, 1959, an order was made by the court that on November 12, 1959, the defendant show cause why he should not be adjudged guilty of contempt of court for wilfully disobeying the order with respect to his removal from the residence of the parties. On November 10, 1959, another order to show cause of the same nature was obtained by the plaintiff. As heretofore stated, the proceeding with respect to the alleged contempt was thereafter dismissed.

The defendant's attack on the judgment is stated to be founded on a claim of lack of jurisdiction of the court because of the filing of the affidavit with respect to the disqualification of the judge and ''the transfer of the case to Department

One at Los Angeles on October 6, 1959.'' He contends that ''the Court thereby lost all jurisdiction in this case and its orders thereafter were null and void.''

 We need not be concerned with the failure of the judge who heard the demurrer to the original complaint and the motion for ''change of venue'' to honor the appellant's claim with respect to his disqualification under section 170.6 of the Code of Civil Procedure. The appellant suffered no prejudice inasmuch as, after his demurrer was sustained and his first motion ''for change of venue'' (which was actually a motion for the transfer of the case from the Glendale department to another department of the court[2]) was denied without prejudice, he permitted his default to be entered. Thereafter, he was not in a position to assert a claim of disqualification under section 170.6 of the Code of Civil Procedure because that section is limited in its prohibition to a trial or hearing ''which involves a contested issue of law or fact.''

 As this court said in *Heathman* v. *Vant*, 172 Cal.App. 2d 639, at page 646 [343 P.2d 104] : ''When defendant failed to demur or answer, the court properly entered his default. After the service of summons on defendant he was not entitled to notice that his default would be entered.[3] After the entry of his default, notice of subsequent proceedings was not required to be given. (Code Civ. Proc., §§ 585, 1010.) Where the defendant in an action for divorce is personally served and defaults, the default admits all the allegations of the complaint, and he is estopped from thereafter challenging them. (*Christiana* v. *Rose*, 100 Cal.App.2d 46, 50 [222 P.2d 891].)'' (See also *Horton* v. *Horton*, 18 Cal.2d 579, 585 [116 P.2d 605] ; *Rackov* v. *Rackov*, 164 Cal.App.2d 566, 570 [330 P.2d 926].)

The appellant took no steps in the trial court to set aside the default entered when he failed to answer the amended complaint. On this appeal, the scope of his attack upon the judgment is limited. ''Such a defaulting appellant must confine his attack to the consideration of jurisdiction or of the sufficiency of the pleadings. (*Reed Orchard Co.* v. *Superior Court* (1912), 19 Cal.App. 648, 662 [128 P. 9, 18] ;

---

[2]In the body of the notice of motion is the following: ''. . . defendant herein will . . . move the Court for a change of venue and a transfer of this action to be heard at the County Seat. There is reason to believe that an impartial trial cannot be had herein.''

[3]The appellant cannot complain of the first entry of default since it was vacated. The second entry of default was proper. (Code Civ. Proc., § 586, subd. 1; see 2 Witkin, California Procedure, 1693-1694.)

*Crackel* v. *Crackel* (1911), 17 Cal.App. 600 [121 P. 295]; *San Gabriel Valley Bank* v. *Lake View Town Co.* (1906), 4 Cal.App. 630, 633 [89 P. 360]; *Lester* v. *Beer* (1946), 74 Cal.App.2d Supp. 984, 987 [168 P.2d 998].)'' (*Line* v. *Line,* 75 Cal.App.2d 723, at 728-729 [171 P.2d 733]; see also *Lukasik* v. *Lukasik,* 108 Cal.App.2d 609, 613 [239 P.2d 497].)

■ There was no error of a jurisdictional nature with respect to the disposition of the community property. In *Warren* v. *Warren,* 120 Cal.App.2d 396 [261 P.2d 309], in which an interlocutory judgment of divorce was granted to the plaintiff after the entry of the default of the defendant, the court said, at page 398: ''Defendant challenges the judgment on the theory that the relief granted exceeds that requested in the complaint since all the community property was awarded to plaintiff under a prayer demanding an equitable division thereof. In this connection it must be borne in mind that the complaint charges cruelty. Upon this charge being sustained it was within the trial court's discretion to award all the community property to plaintiff as the innocent spouse. (*Nelson* v. *Nelson,* 100 Cal.App.2d 348, 350 [223 P.2d 636]; *Barham* v. *Barham,* 33 Cal.2d 416, 431 [202 P.2d 289].) We must assume that under the evidence such a distribution of the property appeared equitable to the trial court. There was ample foundation therefor both in the law and in the prayer.''[4]

■ Aside from the fact that the appellant was in default and, therefore, not in a position to seek a transfer of the case

---

[4]Although the appellant does not raise any issue as to the effective date of the disposition of property, it is to be noted that in the interlocutory judgment of divorce it is stated that at the time of the final judgment ''the Court shall grant such other and further relief as may be necessary to complete disposition of this action.'' Accordingly, the reasoning of *Davis* v. *Davis,* 123 Cal.App.2d 753, at page 757 [267 P.2d 403], is applicable: ''The interlocutory decree specifically provides that at the time of entering the final decree '*the court shall grant such other and further relief as may be necessary to a complete disposition of this action.*' The part of the decree relating to the award of the property must be read in conjunction with the italicized provision, *supra.* When so read, the result is that the interlocutory decree determines 'the manner in which the community property is to be assigned at the time of the entry of the final decree. The language in the interlocutory decree purporting to make a final disposition of the community property will be disregarded as surplusage.' (*Johnston* v. *Johnston,* 106 Cal.App.2d 775, 781-782 [236 P.2d 212]; *Webster* v. *Webster,* 216 Cal. 485, 493 [14 P.2d 522].) While this court could modify the decree and affirm it as modified (*Slavich* v. *Slavich,* 108 Cal.App.2d 451, 457 [239 P.2d 100]; *Dowd* v. *Dowd,* 111 Cal.App.2d 760, 765 [245 P.2d 339]), it is not necessary to take this action when the decree is considered in its entirety (*Lo Vasco* v. *Lo Vasco,* 46 Cal.App.2d 242, 247 [115 P.2d 562]).''

from the Glendale department to another department of the superior court in the county,[5] such an order would not render void an interlocutory judgment of divorce thereafter granted in the Glendale branch of the court before the case had been assigned by the presiding judge of the superior court to any other specific department for hearing and determination on the merits. As stated in *In re Johnson,* 101 Cal.App. 110, at page 120 [281 P. 435] : ''In any event, the different departments hold but one and the same court (*Nickel* v. *State,* 179 Cal. 126 [175 P. 641] ; *Brown* v. *Campbell,* 110 Cal. 644 [43 P. 12]), and if one department exercises authority in a matter which might more properly be heard in another, its action constitutes at most an irregularity, and does not affect the jurisdiction. (*Graziani* v. *Denny,* 174 Cal. 176 [162 P. 397] ; *Carter* v. *Lothian,* 133 Cal. 451 [65 P. 692].)'' (See also *Williams* v. *Superior Court,* 14 Cal.2d 656, 662-663 [96 P.2d 334].) Having defaulted, the appellant is not in a position to complain of such irregularity.

Since the appellant's attack on the interlocutory judgment of divorce, which was entered on October 9, 1959, must fail, it is clear that the respondent will be entitled to a final judgment of divorce when the determination herein made becomes final. Upon the entry of such judgment, her title and right to possession of the real property will entitle her to exclude the appellant therefrom if he has not removed from the premises in the meantime. Since any determination we might make with respect to the validity or propriety of the order of September 17, 1959, as to the removal of the appellant from the home would become final as of the same time as our determination of the appeal with respect to the judgment, the question presented on the appeal from that order is, in reality, moot. A similar problem was before the court in *Nomm* v. *Nomm,* 164 Cal.App.2d 663 [330 P.2d 839], wherein the defendant appealed from an order for his exclusion from the home of the parties. However, he did not appeal

---

[5]As stated in 2 Witkin, California Procedure, at page 1699: ''The clerk's entry of default cuts off the defendant's right to take any further affirmative steps such as pleading or motion, and he is not entitled to notices or service of pleadings or papers.'' In *Brooks* v. *Nelson,* 95 Cal. App. 144 [272 P. 610], the applicable rule is succinctly stated at pages 147-148: ''A defendant against whom a default has been entered is out of court and is not entitled to take any further steps in the cause affecting plaintiff's right of action; he cannot thereafter, until such default is set aside in a proper proceeding, file pleadings or move for a new trial, or demand notice of subsequent proceedings.'' (See also *Heathman* v. *Vant, supra,* 172 Cal.App.2d 639, 647; *Taintor* v. *Superior Court,* 95 Cal.App.2d 346, 350 [213 P.2d 42].)

from the interlocutory judgment of divorce which awarded the home to the plaintiff. There the court said, at page 664: "An adjudication that the court should not have restrained defendant from entering it [the home] between September 13, 1957 and March 4, 1958, the date of the decree, could now have no real consequences. The order being prohibitory in form, but mandatory in its nature, its effect would have been stayed by the appeal. (See *Food & Grocery Bureau* v. *Garfield*, 18 Cal.2d 174, 177 [114 P.2d 579]; *Smith* v. *Smith*, 18 Cal.2d 462, 465 [116 P.2d 3].) The decree would supersede the restraining order, and defendant would not be entitled to possession now. Any determination of whether he should have been entitled to enter during the six months from September to March would be futile. The question might still have some vitality had an appeal been taken from the interlocutory decree, but no such appeal has been taken, and the time for filing the notice of appeal has now run." In the present case, the question retains no vitality from the fact that there is an appeal from the interlocutory judgment inasmuch as that judgment must be affirmed and, because of the lapse of the necessary year, upon this decision becoming final the respondent will immediately be entitled to a final judgment. A reversal of the order of September 17, 1959, would be without practical effect. This court on its motion may dismiss an appeal as involving only a moot question. (*Newell* v. *Newell*, 46 Cal.2d 861 [299 P.2d 849]; *Nelsen* v. *Jensen*, 177 Cal.App.2d 270, 273 [2 Cal.Rptr. 180]; *Immerman* v. *Immerman*, 176 Cal.App.2d 122, 128 [1 Cal.Rptr. 298].)

The appeal from the order of September 17, 1959, the appeal from the "Order after judgment *in re* contempt," and the other appeals noted herein, except that from the interlocutory judgment of divorce, are dismissed. The interlocutory judgment of divorce is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied December 20, 1960.